# Illinois Official Reports

## Appellate Court

---

### *Sablik v. County of De Kalb*, 2019 IL App (2d) 190293

---

| | |
|---|---|
| Appellate Court Caption | ARTHUR SABLIK, as Guardian of the Estate of Bernice Sablik, Plaintiff-Appellant, v. THE COUNTY OF DE KALB, d/b/a De Kalb County Rehab & Nursing Center, Defendant-Appellee. |
| District & No. | Second District<br>No. 2-19-0293 |
| Filed | December 20, 2019 |
| Decision Under Review | Appeal from the Circuit Court of De Kalb County, No. 18-L-13; the Hon. Bradley J. Waller, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part.<br>Cause remanded. |
| Counsel on Appeal | Michael W. Rathsack, Steven M. Levin, Jaime A. Koziol, and Nicholas Emerson, all of Chicago, for appellant.<br><br>Terrence S. Carden III and Todd M. Porter, of Carden & Tracy, of Chicago, for appellee. |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion.<br>Justices Hudson and Bridges concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Arthur Sablik, as guardian of the estate of Bernice Sablik, sued the County of De Kalb, doing business as De Kalb County Rehab & Nursing Center (County), alleging negligent treatment under the Nursing Home Care Act (210 ILCS 45/1-101 *et seq.* (West 2018)). The County moved to dismiss plaintiff's complaint (735 ILCS 5/2-619(a)(9) (West 2018)), asserting that the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 *et seq.* (West 2018)) supersedes the Nursing Home Care Act and bars plaintiff's claim. The trial court granted the motion and dismissed plaintiff's complaint. Plaintiff appeals. We affirm in part, reverse in part, and remand the cause for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3    On August 11, 2017, plaintiff, as guardian of Bernice's estate (see 755 ILCS 5/27-6 (West 2016)), sued the County in the circuit court of Cook County (case No. 17-L-8192), alleging violations of the Nursing Home Care Act. He asserted that, prior to May 18, 2016, Bernice (born on December 7, 1934) was legally disabled. He alleged that, from about May 18, 2016, through August 16, 2016, Bernice was a resident of the De Kalb County Rehab & Nursing Center (center), a long-term care facility. The County owned, operated, and/or managed the center.

¶ 4    Plaintiff further alleged that the center was a nursing facility under the Nursing Home Care Act (210 ILCS 45/1-113 (West 2016)) and that the County knew or should have known that Bernice was at high risk for the development and deterioration of pressure sores. Between June and July 2016, Bernice developed multiple pressure sores while at the center. The County— through its agents, servants, and employees—breached its duties under the Nursing Home Care Act, including the duty not to abuse or neglect any resident. Plaintiff alleged that the County, "through its actual, implied, and/or apparent agents, servants, and employees, was negligent" in its care and treatment of Bernice, where, among other acts and omissions, it failed to timely implement appropriate pressure-sore interventions, failed to institute an individualized turning and repositioning schedule for Bernice to prevent her from placing undue weight on bony prominences and existing pressure sores, and failed to properly train individuals who provided care to Bernice. Plaintiff argued that, as a direct and proximate cause of one or more of the County's statutory violations and negligent acts and omissions, Bernice suffered personal and pecuniary injuries.

¶ 5    On October 10, 2017, the parties agreed to transfer the case to De Kalb County, and the trial court entered an order effectuating the transfer. Bernice died on November 21, 2018.

¶ 6    On January 11, 2019, the County moved to dismiss plaintiff's complaint (735 ILCS 5/2-619(a)(9) (West 2018)), arguing that the Tort Immunity Act supersedes the Nursing Home Care Act and bars plaintiff's claim. First, the County argued that plaintiff's claim was barred by section 2-109 of the Tort Immunity Act, which provides that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109 (West 2018). Second, the County argued that the claim was barred by section 2-204, which immunizes public *employees* from liability, stating that, "[e]xcept as otherwise provided by statute, a public employee, as such and acting within the scope of his [or her] employment, is not liable for an injury caused by the act or omission of

another person." *Id.* § 2-204. Finally, the County argued that, to the extent that plaintiff sought to recover for the County's alleged failure to *supervise* its employees, the claim was barred by section 3-108, which provides that

> "neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on *** any public property unless the employee or the local public entity has a duty to provide supervision *** and the local public entity or public employee is guilty of willful and wanton conduct in its failure to provide supervision proximately causing such injury." *Id.* § 3-108(b).

¶ 7 On March 18, 2019, the trial court granted the County's motion and dismissed plaintiff's complaint, with prejudice. The court found that all three sections of the Tort Immunity Act raised by the County immunized it from liability, although the court noted that the application of section 3-108 was "a little tenuous." The court declined plaintiff's request to elaborate how each section applied. Plaintiff appeals.

¶ 8 <h2 style="text-align:center">II. ANALYSIS</h2>

¶ 9 Plaintiff argues that (1) the Nursing Home Care Act imposes liability on county-operated nursing homes, such as the center, for injuries caused by neglect and, by its plain language, it supersedes section 2-204 of the Tort Immunity Act; (2) because section 2-204 does not apply, neither does section 2-109; and (3) section 3-108 does not apply because plaintiff's complaint does not sound in lack of supervision.

¶ 10 The purpose of a motion to dismiss under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2018)) is to dispose of issues of law and easily proved issues of fact at the outset of the litigation. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). Specifically, section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2018)) permits dismissal where the claim asserted is barred by other affirmative matter that avoids the legal effect of, or defeats, the claim. The effect of a section 2-619(a)(9) motion is that the moving party admits the legal sufficiency of the complaint but asserts an affirmative matter outside the complaint that defeats the cause of action. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 31. If, after construing the pleadings in the light most favorable to the nonmoving party, the court finds that no set of facts, if proven, would support the claim, then the court should grant the motion. *Id.* We review *de novo* a dismissal under section 2-619. *Van Meter*, 207 Ill. 2d at 368. Furthermore, we review *de novo* statutory construction issues. *Accettura v. Vacationland, Inc.*, 2019 IL 124285, ¶ 11. Our primary objective is to ascertain and give effect to the legislative intent, the most reliable indicator of which is the statutory language itself, given its plain and ordinary meaning. *Id.*

¶ 11 The Nursing Home Care Act's purpose is to improve nursing home care. *Eads v. Heritage Enterprises, Inc.*, 204 Ill. 2d 92, 97 (2003). It expressly grants nursing home residents the right to pursue actions for damages and other relief against nursing home facilities. *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 464 (1999). Section 3-601 provides that facility owners and licensees are liable to residents for injuries caused by the intentional or negligent acts of their employees or agents. 210 ILCS 45/3-601 (West 2018). Section 3-602 makes licensees liable for damages to nursing home residents whose rights under the Nursing Home Care Act are violated. *Id.* § 3-602. Section 3-603 specifies that a resident may maintain an action under the statute for any other type of relief permitted by law. *Id.* § 3-603. Although the Nursing Home Care Act grants nursing home residents a private cause of action against owners

and licensees who violate its provisions (*id.* § 3-601), the statute does not impose liability on individual employees. *Eads*, 204 Ill. 2d at 108-09. The Nursing Home Care Act's provisions apply to county-operated nursing homes such as the center. 210 ILCS 45/1-113 (West 2018).

¶ 12    The Tort Immunity Act, in turn, protects local public entities and their employees from liability arising from government operations. *Van Meter*, 207 Ill. 2d at 368; see 745 ILCS 10/1-101.1(a) (West 2018). The statute's purpose is to prevent the dissipation of public funds on damages awards in tort cases. *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 229 (2007). Under the Tort Immunity Act, local governmental entities are liable in tort, but this liability is limited "with an extensive list of immunities based on specific government functions." *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466, 471 (2001). Because the immunities operate as an affirmative defense, the governmental entity bears the burden of properly raising and proving its immunity. *Van Meter*, 207 Ill. 2d at 370. If no immunity provision applies, the governmental entity is liable in tort to the same extent as a private party. *Murray*, 224 Ill. 2d at 229. Because it is in derogation of the common law, the Tort Immunity Act is strictly construed against the governmental entity. *Van Meter*, 207 Ill. 2d at 380.

¶ 13                          A. Section 2-204 of the Tort Immunity Act

¶ 14    Plaintiff argues first that the Nursing Home Care Act supersedes section 2-204 of the Tort Immunity Act and that, because section 2-204 does not apply, neither does section 2-109. The trial court found that section 2-204, which provides that a public employee is not liable for injury caused by another person, immunizes the County, but it did not explain its reasoning. On appeal, the County does not focus on section 2-204 and merely attempts to distinguish plaintiff's case law. We conclude that the trial court erred in determining that section 2-204 immunizes the County. That section has no application in this case, because its prefatory language contemplates that it can be overridden by another statute. Further, because section 2-204 does not apply, section 2-109 does not apply.

¶ 15    Plaintiff relies on *Paulson v. County of De Kalb*, 268 Ill. App. 3d 78 (1994), a case that the County relied on below and that the trial court found did not support plaintiff's position. In *Paulson*, the plaintiff sued the County, which operated the De Kalb County Nursing Home, for injuries she sustained while a resident of the home. A jury awarded her $20,000 in compensatory damages, and the trial court, pursuant to section 3-602 of the Nursing Home Care Act (210 ILCS 45/3-602 (West 1992)), trebled the award. The County appealed, arguing that the section 3-602 damages were punitive damages and that, because section 2-102 of the Tort Immunity Act (745 ILCS 10/2-102 (West 1992)) shields local public entities from liability for punitive damages, the trial court erred in trebling the award.

¶ 16    We initially noted that the Nursing Home Care Act applied to county-operated nursing homes such as the County's facility. *Paulson*, 268 Ill. App. 3d at 80 (citing 210 ILCS 45/1-113 (West 1992)). We also noted that section 2-102 of the Tort Immunity Act provides that " '*[n]otwithstanding any other provision of law*, a local public entity is not liable to pay punitive or exemplary damages in any action brought *** against it by the injured party.' " (Emphasis added.) *Id.* (quoting 745 ILCS 10/2-102 (West 1992)). Counties are " 'local public entities' " within section 2-102's ambit. *Id.* (quoting 745 ILCS 10/1-206 (West 1992)). Case law had held that the treble-damages provision in section 3-602 of the Nursing Home Care Act was punitive and that a plaintiff may recover either treble damages under the statute or

- 4 -

common-law punitive damages, but not both. *Id.* (citing *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 358-61 (1986)); see also *People ex rel. Fahner v. Climatemp, Inc.*, 101 Ill. App. 3d 1077, 1080-82 (1981).

¶ 17 Addressing the plaintiff's argument that the legislature intended that treble damages be assessed against county-operated nursing homes, we held that the trial court erred in assessing treble damages under section 3-602 of the Nursing Home Care Act, because section 2-102 of the Tort Immunity Act prohibits the assessment of punitive damages against a local public entity such as the County. *Paulson*, 268 Ill. App. 3d at 83. We first rejected the plaintiff's argument that, because the Nursing Home Care Act explicitly excluded from its regulatory provisions homes operated by the state or the federal government but not county-operated homes, the legislature intended that treble damages be assessed against county-operated homes. *Id.* at 82-83. We pointed to the phrase " '*[n]otwithstanding any other provision of law*' " that appears in section 2-102 of the Tort Immunity Act (emphasis added) (*id.* at 83 (quoting 745 ILCS 10/2-102 (West 1992)), which " 'was intended *** to clarify the relationship between the Tort Immunity Act, which prohibits the assessment of punitive damages against a local public entity, and all other statutes or common law actions which may allow the assessment of punitive damages in certain circumstances.' " *Id.* at 82-83 (quoting *Holda v. County of Kane*, 88 Ill. App. 3d 522, 528 (1980) (opinion of Lindberg, J.)). We also noted that there was nothing in the Nursing Home Care Act to indicate that it "should remain unaffected by the Tort Immunity Act." *Id.* Thus, we concluded that we could construe the two provisions "harmoniously" and that a contrary reading was not consistent with the public policy against imposing punitive damages on local taxpayers. *Id.* at 83.

¶ 18 Here, plaintiff argues that, unlike in *Paulson*, the specific trumping provision is in the Nursing Home Care Act, rather than the Tort Immunity Act. Section 2-204 of the Tort Immunity Act, upon which the County relies, begins with limiting language analogous to that analyzed in *Paulson* from section 2-102 of the Tort Immunity Act but, plaintiff argues, with the opposite effect.

¶ 19 Section 2-204 of the Tort Immunity Act states, "*[e]xcept as otherwise provided by statute*, a public employee, as such and acting within the scope of his [or her] employment, is not liable for an injury caused by the act or omission of another person." (Emphasis added.) 745 ILCS 10/2-204 (West 2018). In contrast, section 2-102 of the Tort Immunity Act states, in relevant part, "*[n]otwithstanding any other provision of law*, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party." (Emphasis added.) *Id.* § 2-102. According to plaintiff, the prefatory language in each provision reflects whether the provision trumps, or is subservient to, another statute. Section 2-204, he asserts, is subservient to all other statutes. This is critical, he notes, because section 1-113 of the Nursing Home Care Act "provides otherwise" and makes that statute applicable to the County. Thus, the Nursing Home Care Act trumps the Tort Immunity Act, including section 2-204. Plaintiff maintains that the County's view contradicts this hierarchy. Under the County's reasoning, he argues, the legislature created nursing home duties and provided a remedy for neglect of those duties in a law explicitly covering municipally operated homes, but it left in place another statutory scheme—section 2-204 of the Tort Immunity Act—that immunizes the County for neglect. Plaintiff asserts that this does not make sense. He further argues that such an outcome violates the general rule that, when statutory language admits of more than one construction, courts should avoid an interpretation

producing an absurd or unreasonable result. See, *e.g.*, *Alvarez v. Pappas*, 374 Ill. App. 3d 39, 47 (2007). Furthermore, generally, a more recent statute (the Nursing Home Care Act) takes precedence over an earlier one (the Tort Immunity Act). See, *e.g.*, *Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24, 58 (1990).

¶ 20    The County responds that *Paulson* did not involve the immunity provisions at issue in this case.[1] Thus, while it stands for the proposition that the Tort Immunity Act trumps the Nursing Home Care Act on the issue of damages, it does not stand for the proposition, as plaintiff suggests, that the Nursing Home Care Act trumps the Tort Immunity Act on all other issues. The County further argues that nothing in the Nursing Home Care Act reflects that the legislature intended that sections of that statute should remain unaffected by the Tort Immunity Act.

¶ 21    We agree with plaintiff. The prefatory language in section 2-204 of the Tort Immunity Act is clear, and it shows that the legislature contemplated that the statute could be overridden by other enactments. The Nursing Home Care Act explicitly applies to county-operated nursing homes. 210 ILCS 45/1-113 (West 2018). It also imposes liability on owners and licensees for negligent acts or omissions of their agents or employees that injure a resident. *Id.* § 3-601. These provisions reflect that the Nursing Home Care Act overrides section 2-204 of the Tort Immunity Act, which, again, applies "*[e]xcept as otherwise provided by statute*." (Emphasis added.) 745 ILCS 10/2-204 (West 2018). Section 2-204 does not immunize the County, and because it does not apply, section 2-109 does not apply.

¶ 22                          B. Section 3-108 of the Tort Immunity Act

¶ 23    Next, plaintiff argues that the trial court erred in determining that the County was immune from liability under section 3-108 of the Tort Immunity Act. For the following reasons, we conclude that section 3-108 applies *only* to the failure-to-supervise allegation in plaintiff's complaint.

¶ 24    Section 3-108 of the Tort Immunity Act provides:

"(a) *Except as otherwise provided in this Act*, neither a local public entity nor a public employee who *undertakes to supervise* an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury.

(b) *Except as otherwise provided in this Act*, neither a local public entity nor a public employee is liable for an injury caused by a *failure to supervise* an activity on or the use of any public property unless the employee or the local public entity has a duty to provide supervision imposed by common law, statute, ordinance, code or regulation and the local public entity or public employee is guilty of willful and wanton conduct in its failure to provide supervision proximately causing such injury." (Emphases added.) *Id.* § 3-108.

¶ 25    As noted above, section 3-601 of the Nursing Home Care Act provides that "[t]he owner and licensee are liable to a resident for any intentional or negligent act or omission of their agents or employees which injures the resident." 210 ILCS 45/3-601 (West 2018). This is the

---

[1]The County cited *Paulson* below for the proposition that the Tort Immunity Act's immunity provisions supersede the Nursing Home Care Act.

primary provision under which plaintiff brought his complaint. Section 3-602 provides that "[t]he licensee shall pay the actual damages and costs and attorney's fees to a facility resident whose rights, as specified in Part 1 of Article II of this Act, are violated." *Id.* § 3-602.

¶ 26 Plaintiff argues that his complaint does not sound in lack of supervision, which is the focus of section 3-108 of the Tort Immunity Act, and that, therefore, that section cannot apply. He notes that, of his 17 allegations of negligence, only 1 allegation charged a failure to train. Without citing any authority for the proposition, plaintiff maintains that the failure to train is not the failure to supervise. Furthermore, he maintains that, even if it were, the other 16 allegations would remain unaffected. Addressing other portions of his complaint that the County argued below alleged a failure to supervise, plaintiff notes that they simply set out the County's duties, not its negligence. Thus, in his view, they do not implicate section 3-108 of the Tort Immunity Act.

¶ 27 The County responds that plaintiff's complaint contained allegations regarding supervision of both Bernice and employees and that these implicate section 3-108 of the Tort Immunity Act. The allegations to which the County refers reflect as follows. The complaint alleged that the County had a duty to provide Bernice with supervision and assistance with activities of daily living, both to ensure that she received proper care and to prevent the development and deterioration of pressure sores. It also alleged that the County had a duty not to abuse or neglect any resident and that such abuse or neglect included the failure to provide personal care in the form of general supervision of the physical and mental well-being of an individual. Plaintiff's complaint also alleged that the County had a duty not to violate any resident's rights, including ensuring that its staff was familiar with and observed the rights and responsibilities enumerated in the appropriate article of the Illinois Administrative Code (77 Ill. Adm. Code 300) and that the center provided adequate and properly supervised nursing care and personal care to each resident to meet his or her needs. The County argues that section 3-108 of the Tort Immunity Act is broad and provides immunity for the failure to supervise the resident and the County employees caring for the resident. It argues that plaintiff's complaint contained allegations addressing both supervision of the resident and supervision of County employees and that the foregoing duty allegations preface and serve as the predicates for plaintiff's allegations that the County, pursuant to section 3-601 of the Nursing Home Care Act, breached its duty to Bernice.

¶ 28 We conclude that section 3-108 of the Tort Immunity Act immunizes the County from only the portion of plaintiff's complaint that alleges a failure to supervise. As noted, only one of plaintiff's 17 negligence allegations, that the County failed to properly train individuals who provided care to Bernice, concerns a failure to supervise. Plaintiff's other allegations included failing to provide adequate medical and personal care; failing to provide the necessary services to attain or maintain her well-being in accordance with a comprehensive assessment and plan of care; failing to prevent a decline in Bernice's abilities to perform activities of daily living; failing to avoid development of pressure sores and promote healing of existing sores; failing to assess and reassess upon a change in condition Bernice's risk for the development and deterioration of pressure sores; failing to develop, implement, revise, and communicate to staff a care plan to address her risk for the development and deterioration of pressure sores; failing to document and administer treatments, medications, and care to Bernice as ordered by her physician; failing to institute an individualized turning and repositioning schedule for her and to prevent her from placing undue weight on bony prominences and existing pressure sores; failing to implement interventions to prevent the development and deterioration of pressure

sores; failing to perform and document daily skin assessments, wound checks, and weekly wound assessments; failing to timely notify Bernice's physician and family about changes in her condition; failing to provide Bernice with restorative and rehabilitative nursing measures to meet her individual care needs; failing to provide objective observations of changes in her condition as a means for analyzing and determining the care required and the need for further medical evaluation and treatment; failing to maintain sufficient nursing staff to attain or maintain Bernice's highest practicable well-being as determined by her assessments and individual plans of care; failing to provide services in compliance with all applicable professional standards, including maintaining adequate documentation of her medical record; and failing to promote care for Bernice in a manner and environment that maintained or enhanced her dignity and respect.

¶ 29 Clearly, as the foregoing allegations reflect, plaintiff's complaint does not sound solely or even primarily in a failure to supervise. Accordingly, we conclude that section 3-108 applies only to the complaint's failure-to-train/supervise allegation, and we affirm that aspect of the trial court's ruling.[2] Otherwise, we reverse the court's dismissal.

¶ 30                                    III. CONCLUSION

¶ 31 For the reasons stated, the judgment of the circuit court of De Kalb County is affirmed in part and reversed in part, and the cause is remanded for further proceedings.

¶ 32 Affirmed in part and reversed in part.

¶ 33 Cause remanded.

_____

[2]We note that plaintiff did not allege willful and wanton conduct with respect to his failure-to-supervise allegation. If it had, the immunity provided by section 3-108 would not apply. 745 ILCS 10/3-108 (West 2018).