# Illinois Official Reports

## Supreme Court

---

### *Accettura v. Vacationland, Inc.*, 2019 IL 124285

---

| | |
|---|---|
| Caption in Supreme Court: | KIMBERLY ACCETTURA *et al*., Appellants, v. VACATIONLAND, INC., Appellee. |
| Docket No. | 124285 |
| Filed | September 19, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Kane County, the Hon. David Akemann, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Dmitry N. Feofanov, of ChicagoLemonLaw.com, P.C., of Lyndon, for appellants. |
| | Daniel S. Porter and Jennifer L. Friedland, of Momkus LLC, of Lisle, for appellee. |
| | Peter S. Lubin, of Lubin Austermuele P.C., of Elmhurst, and Terry J. Adler, of Grand Blanc, Michigan, for *amici curiae* National Association of Consumer Advocates *et al.* |

Justices JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Thomas, Kilbride, Burke, Theis, and Neville concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs Kimberly Accettura and Adam Wozniak purchased a recreational vehicle (RV) from defendant Vacationland, Inc. When it leaked during a rainstorm, they brought it in for repair. When it leaked again, they brought it back. A little more than two weeks after they dropped it off the second time and without a timetable for when the vehicle would be repaired, they told the seller that they no longer wanted the RV and asked for their money back. At issue is whether plaintiffs properly revoked their acceptance without permitting defendant a reasonable opportunity to cure the defect.

¶ 2                                    BACKGROUND

¶ 3    On April 19, 2014, plaintiffs purchased a new 2014 Palomino trailer from defendant for $26,000.25. They took possession of the RV on April 25. That June, they discovered water leaking into the RV from the emergency exit window. They brought the RV back to defendant for repair, which defendant performed without charge.

¶ 4    In July 2014, plaintiffs took the RV to Michigan. During a rainstorm, the RV leaked extensively into the dinette area, damaging the walls and causing electrical failure. Plaintiffs towed the RV back to defendant for repair on July 14. Defendant was unable to repair the defect itself, so one of its employees told plaintiffs that it would have to send the RV to the manufacturer for repair. Defendant's employees could not estimate how long the manufacturer would take to repair the RV. Plaintiffs state that they called the manufacturer, which also would not give them a time estimate and referred them to defendant. On August 2, before the manufacturer picked up the RV, plaintiffs called defendant and verbally revoked acceptance of the RV. The manufacturer picked the RV up on or around August 4 and returned it on or around September 23. Defendant called plaintiffs on September 23 to inform them that the RV was repaired and that they could pick it up. Plaintiffs' attorney sent defendant a letter on September 28 confirming the earlier revocation of acceptance of the RV.

¶ 5    On October 29, 2014, plaintiffs filed a complaint in the circuit court of Kane County, seeking return of their purchase price and other damages under four theories of recovery: revocation of acceptance under the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act (Magnuson-Moss Act) (15 U.S.C. § 2310(d) (2012)); breach of implied warranty of merchantability under the Magnuson-Moss Act (*id.*); revocation of acceptance and cancellation of contract under Illinois's adoption of the Uniform Commercial Code (UCC) (810 ILCS 5/2-608(1)(b), 2-711(1) (West 2014)); and return of purchase price under section 2-711(1) of the UCC (*id.*). Defendant moved for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2016)), arguing that plaintiffs' failure to give it a reasonable opportunity to cure was fatal to their claims. The circuit court granted summary judgment to defendant on all four counts, finding that the record clearly

showed that plaintiffs revoked acceptance on or before August 2, 2014, and did not give defendant a reasonable time to cure. The appellate court affirmed. 2018 IL App (2d) 170972. On appeal to this court, plaintiffs only seek review of the revocation of acceptance claim under the UCC (810 ILCS 5/2-608(1)(b) (West 2014)). We allowed the National Association of Consumer Advocates and Consumers for Auto Reliability and Safety to jointly file an *amicus* brief. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 6                                                          ANALYSIS

¶ 7        Although plaintiffs alleged several counts against defendant, the only issue on appeal to this court is whether plaintiffs could revoke acceptance of the RV under Illinois's adoption of the UCC (810 ILCS 5/1-101 *et seq.* (West 2014)). The statute at issue, adopted verbatim from the UCC, states:

> "(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
>
>> (a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
>
>> (b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or the seller's assurances." 810 ILCS 5/2-608(1) (West 2014).

See U.C.C. § 2-608(1) (Am. Law Inst. & Unif. Law Comm'n 1952).

¶ 8        On appeal to this court, defendant does not dispute that the defect, without repair, substantially impaired the RV's value to plaintiffs. Plaintiffs' expert opined that the defective unit was worth a mere 10% of its purchase price. The record does not show that defendant rebutted this opinion. Rather, defendant relied on its argument that plaintiffs must have given it an opportunity to seasonably cure, which would have remedied any impairment of value.

¶ 9        Defendant likewise does not dispute that plaintiffs were unaware of the defect in the RV at the time they accepted it. Thus, subsection (1)(a) cannot apply, for that subsection, by its plain language, contemplates a buyer who accepted a good she knew to be nonconforming "on the reasonable assumption that its non-conformity would be cured." *Id.* § 2-608(1)(a). Thus, if plaintiffs can revoke their acceptance, they can do so because they accepted the RV "without discovery of such non-conformity" and their "acceptance was reasonably induced either by the difficulty of discovery before acceptance or the seller's assurances." *Id.* § 2-608(1)(b).

¶ 10        Plaintiffs brought the RV to defendant for repair on July 14. Before defendant sent the RV to the manufacturer, one of its employees gave plaintiffs what plaintiffs described as a "very vague and extended" timeline. Plaintiffs state that they then called the manufacturer, who referred them back to defendant. Upset with defendant's and the manufacturer's inability to give them a timeline for repair, plaintiffs thereafter called defendant to revoke their acceptance of the RV. Defendant argues that plaintiffs were required to give it a reasonable time to cure before they could revoke acceptance.

¶ 11        Interpretation of subsection (1)(b) is an issue of first impression in Illinois. The standard of review for questions of statutory interpretation is *de novo. Taylor v. Pekin Insurance Co.*, 231 Ill. 2d 390, 395 (2008). The primary objective of our analysis is to ascertain and give effect to the legislative intent. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994). The most reliable indicator of the legislature's intent is the statutory language itself, given its plain and

ordinary meaning. *Id.* "It is a basic rule of statutory construction that the words of a statute should be given their plain, ordinary[,] and accepted meaning, unless to do so would defeat the legislative intent." *Peoria Savings & Loan Ass'n v. Jefferson Trust & Savings Bank of Peoria*, 81 Ill. 2d 461, 468 (1980). We do not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the expressed intent. *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009).

¶ 12    Plaintiffs argue that the statutory language is plain: subsection (1)(a) contemplates and expressly mentions a cure; subsection (1)(b) does not. Under subsection (1)(a), they argue, the cure is part of the contract, while under subsection (1)(b) it is not. They illustrate their argument with an analogy: subsection (1)(a) would apply to a buyer who purchased an RV that she knew leaked and included in the sales contract an agreement that the seller would seasonably cure the leak. Subsection (1)(b), they assert, contemplates a buyer who purchases an RV that she reasonably believes does not leak but, she later finds out, does leak. Under plaintiffs' theory, the buyer who knows of the leak and has an agreement with the seller to cure must give the seller a reasonable time to do so, but the buyer who is not aware of the leak can just return the RV to the seller and revoke acceptance, as long as the leak substantially impairs the RV's value. Plaintiffs argue that a majority of other jurisdictions have reached this conclusion.

¶ 13    We agree with this interpretation. The plain language of the statute evinces the General Assembly's intention to allow a buyer to revoke acceptance of a substantially impaired commercial unit under two separate and distinct circumstances. The first circumstance is when the buyer knows of the nonconformity, the buyer accepts the nonconforming unit with a reasonable assumption that the nonconformity will be cured, and the seller fails to seasonably cure it. 810 ILCS 5/2-608(1)(a) (West 2014). The second is when the buyer accepts the nonconforming unit without knowledge of the nonconformity and either the nonconformity was difficult to discover or the seller assured her that the unit conformed to the specifications. *Id.* § 2-608(1)(b).

¶ 14    Both situations contemplate a nonconformity that substantially impairs the unit's value to the buyer. Where they diverge is in the buyer's expectation. The first contemplates a buyer who accepts a nonconforming unit and expects the seller to cure the nonconformity. When she does not get that cure seasonably, she can revoke her acceptance. The second contemplates a buyer who accepts what she believes to be a conforming unit. When she does not get that conforming unit, she can revoke her acceptance. Because we find this language plain and because subsection (1)(b) does not require that a buyer give the seller an opportunity to cure, we need not consider the requirements of other statutes that defendant argues are analogous.

¶ 15    Defendant first argues that Illinois "courts will resort to revocation of acceptance only after attempts at adjustment have failed." *Belfour v. Schaumburg Auto*, 306 Ill. App. 3d 234, 242 (1999). The appellate court below relied on *Belfour* in finding that subsection (1)(b) requires that the buyer give the seller an opportunity to cure. 2018 IL App (2d) 170972, ¶ 40.

¶ 16    In *Belfour*, the plaintiffs bought a car that later caught on fire as one of the plaintiffs drove it. 306 Ill. App. 3d at 236. The defendants did not dispute that this was due to a defect in the car. See *id.* at 236-39. The opinion does not discuss whether the plaintiffs purchased the vehicle with knowledge of a nonconformity that they reasonably assumed the defendants would fix. The opinion cites only subsection (1)(a) and analyzes only that subsection. *Id.* at 241-42.

- 4 -

Subsection (1)(b) was not at issue. As we are considering a revocation of acceptance under subsection (1)(b), we find *Belfour* distinguishable.

¶ 17    Defendant argues that this case involves more than statutory interpretation of subsection (1)(b). Defendant claims that it offered and plaintiffs accepted repair as their remedy for the defect before plaintiffs revoked acceptance. Because they elected that remedy, defendant asserts, they were obligated to allow defendant a reasonable time to complete the repair.

¶ 18    Although a situation could arise in which a buyer acts unreasonably in revoking acceptance of a good after requesting that the seller cure a nonconformity, this is not such a situation. Nothing in the record indicates that plaintiffs agreed to an open-ended repair timeline. The fact that they considered allowing defendant to cure does not obligate them to accept an unreasonable cure. Further, it does not obviate their right to revoke under subsection 2-608(1)(b) (810 ILCS 5/2-608(1)(b) (West 2014)).

¶ 19    Defendant further argues that the cases plaintiffs cite do not comprise a majority of foreign jurisdictions. Rather, it contends, a split of authority exists. It argues that many jurisdictions, and "probably a majority of the commentators," find that the seller has a right to cure when a buyer attempts to revoke acceptance under subsection (1)(b).

¶ 20    Because we find the language plain, we need not look to our sister states' interpretations of this provision. Even if we review those decisions, however, our research indicates that, although a split of authority exists, a majority of other jurisdictions have interpreted their state's adoption of the statutory provision consistent with our decision today. See, *e.g.*, *Head v. Phillips Camper Sales & Rental, Inc.*, 593 N.W.2d 595, 600 (Mich. Ct. App. 1999) ("A majority of courts considering this question have concluded that a seller has no right to cure after a buyer revokes his acceptance under § 2-608(1)(b) of the UCC."); *Bowen v. Foust*, 925 S.W.2d 211, 215 n.6 (Mo. Ct. App. 1996) ("[T]he rule that a seller has no right to cure when a buyer justifiably revokes his acceptance remains the majority view." (citing Unif. Commercial Code § 4 U.L.A. 63 (1995))); *Gappelberg v. Landrum*, 666 S.W.2d 88, 90 (Tex. 1984) ("The only reference to cure in [section 2-608] is in situations when the buyer knew of the defects at the time of acceptance of the goods."); *Johannsen v. Minnesota Valley Ford Tractor Co.*, 304 N.W.2d 654, 657 (Minn. 1981) ("[T]he seller has no right to cure defects which substantially impair the good's value."); *Werner v. Montana*, 378 A.2d 1130, 1136-37 (N.H. 1977) ("In the context of revocation, [section 2-608(1)(a)] speaks to the seller's opportunity to seasonably cure a defect," as distinguished from subsection (1)(b).).

¶ 21    Notably, although it appears that the courts in some of our sister states would rule to the contrary, we did not find a case in which a court expressly interpreted the statutory language and found that subsection (1)(b) required that the buyer give the seller an opportunity to cure. Rather, the decisions that run contra to ours seem to base their decision on policy grounds (see, *e.g.*, *Conte v. Dwan Lincoln-Mercury, Inc.*, 374 A.2d 144, 149 (Conn. 1976) (" 'One policy of the Code is to encourage the parties to work out their differences and so to minimize losses resulting from defective performance.' " (quoting White & Summers, Uniform Commercial Code § 8-2 n.15))) or gloss over interpretation (see, *e.g.*, *Cuesta v. Classic Wheels, Inc.*, 818 A.2d 448, 451 (N.J. Super. Ct. App. Div. 2003) (citing section 12A:2-508 of the New Jersey Statutes Annotated (N.J. Stat. Ann. § 12A:2-508 (West 2002)) but not further elaborating); *Rester v. Morrow*, 491 So. 2d 204, 210 (Miss. 1986) ("[T]he seller has a right to attempt cure." (citing section 75-2-508 of the Mississippi Code Annotated (Miss. Code Ann. § 75-2-508

(1972)) but not further elaborating)); *Waddell v. L.V.R.V. Inc.*, 125 P.3d 1160, 1165 n.12 (Nev. 2006) (citing *Rester*, 491 So. 2d at 210, without explanation or elaboration)).

¶ 22　　Defendant next argues that when the language of the UCC is ambiguous, which it argues the statute here is, we may consider the committee comments. As we find the language unambiguous, we need not consider them. Even if we did, however, they do not support defendant's position. Defendant cites comment 4 of section 2-608, which states that revocation "will be generally resorted to only after attempts at adjustments have failed," and comment 5, which discusses "considerations of good faith, prevention of surprise, and reasonable adjustment." 810 ILCS Ann. 5/2-608, Uniform Commercial Code Comment, at 482 (Smith-Hurd 1993). These comments both discuss the notice that a revoking buyer must give the seller. As the comment states, a court should consider that most buyers will usually seek a cure before revoking in determining whether the notice of revocation was timely. In determining whether the notice of revocation sufficiently notifies the seller of the nonconformity, the court should consider what information the seller has as a result of the buyer previously seeking a cure. Such consideration, however, is irrelevant to whether the buyer *must* seek a cure before revoking.

¶ 23　　Finally, defendant argues that section 2-608(3), which states that "[a] buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them" (810 ILCS 5/2-608(3) (West 2014)), invokes section 2-508 (*id.* § 2-508). Some of our sister jurisdictions agree. See, *e.g.*, *Cuesta*, 818 A.2d at 451 (citing N.J. Stat. Ann. § 12A:2-508 (West 2002)); *Rester*, 491 So. 2d at 210 (citing Miss. Code Ann. § 75-2-508 (West 1972)); *Conte*, 374 A.2d at 149 (citing Conn. Gen. Stat. Ann. § 42a-2-508 (West 1975)). Section 2-508 allows a seller to cure a rejected nonconforming delivery if "the time for performance has not yet expired" or if "the seller had reasonable grounds to believe [the nonconforming tender] would be acceptable." 810 ILCS 5/2-508 (West 2014).

¶ 24　　We disagree. Rather, we agree with the Michigan appellate court's analysis of this argument. See *Head*, 593 N.W.2d at 600-01 (interpreting UCC section 2-608, discussing the differences between rejection and revocation of acceptance, and finding that subsection (3) does not incorporate UCC section 2-508). Defendant's argument ignores the distinction between rejection and revocation of acceptance. A buyer may reject goods if they "fail in any respect to conform to the contract." 810 ILCS 5/2-601 (West 2014). Once the buyer accepts the goods, however, he may only revoke that acceptance if the "non-conformity substantially impairs its value to him." *Id.* § 2-608(1). When a buyer rejects nonconforming goods, the seller may have a right to cure. *Id.* § 2-508. In the case of a revocation, however, as aptly stated by the *Head* court, "[t]he seller, in turn, loses the right to cure, but gains the benefit of the higher substantial impairment standard for revocation." 593 N.W.2d at 601. We further agree that the "rights and duties" referred to in section 2-608(3) (810 ILCS 5/2-608(3) (West 2014)) are found in sections 2-602, 2-603, and 2-604 (*id.* §§ 2-602, 2-603, 2-604), not section 2-508 (*id.* § 2-508). See *Head*, 593 N.W.2d at 600.

¶ 25　　　　　　　　　　　　　　　CONCLUSION

¶ 26　　We hold that the plain language of subsection 2-608(1)(b) of the Illinois Commercial Code does not require that the buyer give the seller an opportunity to cure a substantial nonconformity before revoking acceptance. We reverse and remand for further proceedings

consistent with this opinion.

¶ 27        Reversed and remanded.