NOTICE

Decision filed 12/06/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220835-U

NO. 5-22-0835

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| RODNECA SKINNER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 22-OP-863 |
| | ) | |
| MESSIAH YUSEF, | ) | Honorable |
| | ) | William G. Clay IV, |
| Respondent-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court.
Justices Barberis and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*: The court did not err in entering an order of protection without finding respondent posed a "true threat" to petitioner because that is not a required showing under the Illinois Domestic Violence Act of 1986 (Domestic Violence Act) (750 ILCS 60/101 *et seq.* (West 2022)) and petitioner satisfied her burden of demonstrating abuse as that term is defined under the applicable statute. The court did not err in granting exclusive possession of the parties' joint residence to petitioner where respondent did not attempt to rebut the statutory presumption and the undisputed evidence revealed respondent already moved to Texas.

¶ 2    Respondent, Messiah Yusef, appeals an order of protection prohibiting him from contacting petitioner, Rodneca Skinner, and granting exclusive possession of the residence they previously shared to Rodneca. He argues the court erred in (1) failing to recognize that he did not pose a "true threat" to Rodneca and (2) granting exclusive possession of the residence to Rodneca without properly balancing the hardships to the parties. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Prior to the events at issue in this appeal, the parties were involved in a relationship and shared an apartment in Belleville, Illinois. Both of their names appeared on the lease. In September 2022, they ended the relationship and Messiah moved to Texas.

¶ 5     On October 3, 2022, Rodneca filed a petition requesting emergency and plenary orders of protection. She alleged that on September 17, 2022, Messiah called her over 20 times and left messages for her on Snapchat, Instagram, and Facebook. She further alleged that on September 20, 2022, he again called her and sent text messages numerous times. She told Messiah multiple times that she needed space and blocked his telephone number, but he continued to call her and send text messages from different numbers. Rodneca alleged that on September 22, 2022, she received two additional calls and one text from Messiah. In addition, Messiah came to her apartment on September 27, 2022, at 4:30 a.m. She went outside to talk to him, left to go to the gym, and when she returned, Messiah remained outside the apartment waiting for her. She further alleged that Messiah threatened to get her fired from her job, told her he had nothing to lose, and called the switchboard at her place of employment several times that day.

¶ 6     Rodneca alleged that Messiah informed her that he would be moving to Dallas on September 19, 2022. However, he was obviously in Belleville on September 27, 2022, when he showed up outside the parties' apartment. She was not clear whether Messiah left before September 27, 2022, and returned for a visit, or his departure was delayed.

¶ 7     Rodneca requested the court to prohibit Messiah from harassing, stalking, or physically abusing her. She also requested exclusive possession of the parties' apartment, admitting both parties had a right to occupy the apartment but alleging that leaving would be harder for her. Finally, she requested the court order Messiah to stay away and have no communication with her.

¶ 8     The court entered an emergency order of protection on October 3, 2022, the same day the petition was filed. On October 24, 2022, the court entered an interim order of protection.

¶ 9     On December 27, 2022, the court held a hearing on Rodneca's request for a plenary order of protection. Both parties appeared *pro se*. Three witnesses testified—Rodneca, Messiah, and Rodneca's mother, Beverly Williams. Beverly testified that Messiah called her three times. During one call, he asked her to convince Rodneca "to give him his stuff back," referring to belongings he had left in the parties' apartment. During the two other calls, Messiah told Beverly that he was a good person and that he would never hurt Rodneca.

¶ 10    Rodneca testified that she had no choice but to file a petition for an order of protection after Messiah's numerous phone calls, emails to her job, coming to her place of employment, and constantly calling the front desk where she worked. She stated, "I wasn't sure if he was going to actually try to hurt me, especially when he popped up at my apartment knocking on my window at 4:00 in the morning."

¶ 11    On cross-examination, Rodneca admitted Messiah's name was on the lease and stated it was his decision to leave. She then testified that Messiah told her on September 17, 2022, that he was moving to Dallas on September 19, 2022. Rodneca agreed that three items of Messiah's personal property remained in the apartment but testified that Messiah told her she could have them.

¶ 12    Messiah testified, with regard to calling Rodneca several times, that "[a] lot of those calls were in reference to try to calm down the issue." He stated that he moved out of the parties' apartment "to try to give a little space and distance." However, he believed he "still lived there" and was "legally responsible" for the apartment. Messiah acknowledged that he called Rodneca at her workplace and indicated that he wanted to apologize for doing so. He admitted, "That was

immature of me ***." Messiah testified that Rodneca failed to mention during her testimony that there were two days in September on which the parties talked and "were okay." He further testified that the parties reached out to each other via text messages and that they were frequently "in communication" with each other.

¶ 13    On cross-examination, Messiah admitted Rodneca asked him to give her some space. He acknowledged that "a few times" he continued to call her from different phone numbers even though she had asked him not to call her and did not answer his calls. He further agreed that Rodneca blocked his phone numbers, and he would call her from different numbers claiming they were "still in communication." Thereafter, Messiah offered into evidence an exhibit which he alleged would support his assertion that the parties were "still in communication." That exhibit is not contained within the record on appeal. At no time during the hearing did Messiah dispute that he had already moved out of the Belleville apartment and was living in Texas.

¶ 14    Following closing arguments, the trial court found Rodneca met her burden of proof. The court found the relationship requirement was met and Rodneca showed harassment by a household member. The court further found the harassment was likely to continue if not prohibited in an order of protection, and the requested relief was necessary to protect her. Addressing Messiah, the court stated, "Sir, based on the evidence that was presented, *** in your own testimony, you did admit to calling her multiple times from different numbers after she told you she didn't want to talk to you." The court went on to discuss Messiah's exhibit and highlighted a text exchange in which Messiah told Rodneca's brother that he would not stop calling Rodneca. The judge explained that the exhibit provided further corroboration of Rodneca's allegations of harassment.

¶ 15    The court entered a plenary order of protection granting all requested relief. In regard to granting Rodneca exclusive possession of the apartment, the court found that both parties had a

4

right to occupy the apartment but that, after considering the factors set forth in the pertinent statute, it would be harder for Rodneca to leave the apartment than Messiah. Messiah timely appealed.

¶ 16                                II. ANALYSIS

¶ 17     On appeal, Messiah argues that the trial court erred in failing to recognize that he did not pose a "true threat" to Rodneca and therefore Rodneca failed to meet her burden of proof. Messiah also argues that the trial court erred in awarding Rodneca exclusive possession of the apartment.

¶ 18     We review the trial court's findings in support of granting a plenary order of protection under the manifest weight of the evidence standard. *Best v. Best*, 223 Ill. 2d 342, 348 (2006). The court's factual findings are against the manifest weight of the evidence only when an opposite conclusion is clearly evident or the findings are arbitrary, unreasonable, or were not based on the evidence. *Leehy v. City of Carbondale*, 2023 IL App (5th) 220542, ¶ 36. However, statutory interpretation is reviewed *de novo*. *Accettura v. Vacationland, Inc.*, 2019 IL 124285, ¶ 11. The primary objective of such analysis is "to ascertain and give effect to the legislative intent," and the most reliable indicator of such intent is the plain and ordinary meaning of the statutory language. *Id*. This court will not read exceptions, limitations, or conditions not expressly contained therein into the statutory language. *Id*.

¶ 19     Here, Messiah contends that the trial court erred by failing to recognize that he was not a "true threat" to Rodneca. However, the Domestic Violence Act does not require a showing of a "true threat" before a court may enter an order of protection and instead provides definitions of behavior that suffice for the entry of an order of protection. See 750 ILCS 60/103(1), (3), (5), (7), (9), (10), (11), (14), (15) (West 2022). Here, the basis of Rodneca's petition was the relationship of a "family or household member," which includes persons who "formerly shared a common dwelling" or had "a dating or engagement relationship." *Id.* § 103(6). The petition further alleged

that Messiah made numerous calls, posted on her Facebook account, and sent messages to her on Instagram and Snapchat over a three-day period, ignored requests to stop the attempts to communicate with her, threatened to commit suicide, repeatedly called her at work, threatened to get her fired from her employment, shut off her internet twice, and canceled a planned flight which Rodneca purchased prior to the breakup. Many of these allegations, which were later supported by testimony and evidence at the hearing, fall directly into the definition of harassment. See *id.* § 103(7)(i)-(ii).

¶ 20    Messiah's reliance on *People v. Roach*, 2023 IL App (4th) 220299-U, and *People v. Swenson*, 2020 IL 124688, to support his claim that a "true threat" must be shown, is unwarranted. *Roach* addressed criminal prosecution for threatening a public official. *People v. Roach*, 2023 IL App (4th) 220299-U, ¶ 21. At issue was whether evidence of the defendant's statement that he would "get that judge" (*id.* ¶ 5) satisfied the statutory elements of that offense beyond a reasonable doubt (see *id.* ¶¶ 16-32). The statute at issue was section 12-9(a)(1)(i) of the Criminal Code of 2012 (720 ILCS 5/12-9(a)(1)(i) (West 2020)). Accordingly, *Roach* is inapplicable here.

¶ 21    Similarly, in *Swenson*, the defendant was charged with the offense of disorderly conduct by performing an act " 'in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace.' " *Swenson*, 2020 IL 124688, ¶ 15 (quoting 720 ILCS 5/26-1(a)(1) (West 2014)). The statute at issue was section 26-1(a)(1) of the Criminal Code of 2012 (720 ILCS 5/26-1(a)(1) (West 2014)), and on review, the court considered, *inter alia*, whether defendant's speech fell within the "true threat" exception to the first amendment's protection of speech (*id.* ¶¶ 24-25). Again, the instant case does not involve a criminal prosecution, and the issues raised in *Swenson* are not applicable here.

6

¶ 22    The central issue here is whether Rodneca satisfied the requirements set forth in the Domestic Violence Act for the issuance of an order of protection. See *Landmann v. Landmann*, 2019 IL App (5th) 180137, ¶ 14. If the trial court finds that the petitioner was abused by a family or household member, "an order of protection prohibiting the abuse *** *shall* issue." (Emphasis added.) 750 ILCS 60/214(a) (West 2022).

¶ 23    "Abuse" within the meaning of the Domestic Violence Act includes physical abuse, intimidation, and harassment. *Id.* § 103(1). The statutory definition of "harassment" is "knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress to the petitioner." *Id.* § 103(7). "[R]epeatedly telephoning petitioner's place of employment, home[,] or residence" is "presumed to cause emotional distress." *Id.* § 103(7)(ii).

¶ 24    The evidence here supports the court's finding that Rodneca satisfied her burden of proof by demonstrating abuse by a household member. Messiah and Rodneca "formerly shared a common dwelling" or had "a dating or engagement relationship." *Id.* § 103(6). The evidence also supports the court's finding of abuse and that such conduct was likely to continue unless prohibited, and that the requested relief was necessary to protect Rodneca from further harassment, as required by statute. See *id.* § 214(c)(3)(i), (ii). Rodneca testified that Messiah repeatedly contacted her by telephone, through text messages, through social media, and in person even after she requested that he not do so. Further, Messiah admitted calling Rodneca multiple times after she asked him not to do so and his exhibit reveals his refusal to stop the abuse. We therefore find no error in the court's granting of Rodneca's request for an order of protection.

¶ 25    Messiah also takes issue with court granting exclusive possession of the parties' residence to Rodneca. Among the remedies available under the Domestic Violence Act is an order granting

exclusive possession of a residence to the petitioner if the petitioner has a right to occupancy. *Id.* § 214(b)(2). This remedy is available even if the respondent owns or leases the residence. *Id.* However, if both parties have the right to occupancy, the court must balance the hardship to the respondent caused by granting exclusive possession to the petitioner against the hardship to the petitioner from either remaining in the residence and continuing to face potential abuse or having to leave the residence to avoid continuing abuse. *Id.* § 214(b)(2)(B). Relevant factors include the availability, accessibility, cost, safety, and adequacy of alternative housing for each party; the effect of leaving the residence on each party's employment; and the effect of moving on each party's relationship to their community, family, school, and church. *Id.* § 214(c)(2). The balance of hardships is presumed to favor granting exclusive possession to the petitioner. However, the respondent can rebut that presumption by demonstrating by a preponderance of the evidence "that the hardships to [the] respondent *substantially outweigh* the hardships to [the] petitioner." (Emphasis added.) *Id.* § 214(b)(2)(B).

¶ 26    The respondent states that "the judge failed to see that removal of the respondent[']s name [from the lease], changing locks, and [the petitioner] keeping [the respondent's] belongings created a greate[r] hardship for the respondent." However, this argument was not raised before the trial court, thereby forfeiting our review of this claim on appeal. See *Fauley v. Metropolitan Life Insurance Co.*, 2016 IL App (2d) 150236, ¶ 55. Moreover, even setting forfeiture aside, the undisputed evidence revealed Messiah had already moved to Texas when the court granted exclusive possession to Rondeca. As such, no error can be found in the court's balancing of the hardships.

¶ 27                                    III. CONCLUSION

¶ 28    For the foregoing reasons, we affirm the order of protection entered by the trial court.

8

¶ 29    Affirmed.