2024 IL App (1st) 231080-U

THIRD DIVISION
June 20, 2024

No. 1-23-1080

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

**IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT**

| | |
|---|---|
| SAHAR HALABI, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellant, | ) Cook County |
| | ) |
| v. | ) No. 2020 M1 106970 |
| | ) |
| MONARCH CONTRACT BUILDERS, LLC, and PATRICK C. LONG, | ) |
| | ) Honorable |
| | ) James Derico, |
| Defendants-Appellees. | ) Judge, Presiding |

JUSTICE D. B. WALKER delivered the judgment of the court.
Presiding Justice Reyes and Justice Lampkin concurred with the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's judgment finding in favor of defendants on plaintiff's consumer fraud claim, and its award of $2,400 to plaintiff.

¶ 2    Plaintiff Sahar Halabi appeals the trial court's determination, after a bench trial, that defendant Monarch Contract Builders, LLC (Monarch) did not violate section 2Q(c) of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2Q(c) (West 2022). She contends that evidence established a violation of the provision where Monarch failed to commence or complete the construction projects per the executed contracts, but

then refused to return plaintiff's down payment in full upon her written demand. Plaintiff further contends that the court should have awarded her all of her economic damages, as well as punitive damages and attorney fees and costs, pursuant to Monarch's Consumer Fraud Act violation. For the following reasons, we affirm.

¶ 3                                      I. BACKGROUND

¶ 4    Plaintiff owns and resides in a condominium located at 165 N. Canal Street in Chicago, Illinois. Monarch is an Illinois limited liability company with its principal place of business in Oak Park, Illinois. Defendant Patrick Long is the sole manager of Monarch.

¶ 5    On September 4, 2019, plaintiff and Monarch entered into a contract for Monarch to perform demolition and construction work on the bathroom and hallway of plaintiff's condominium. The bathroom contract provided that plaintiff would pay $6,500 for labor and $1,500 for materials, totaling $8,000. As required by the contract, she paid Monarch $3,500 as a down payment. Pursuant to the hallway contract, plaintiff agreed to pay $1,300 for labor and $300 for materials, totaling $1,600. She gave Monarch a down payment of $700 as required by the contract.

¶ 6    The contracts further provided that Monarch would perform the work "in accordance" with local building and permit requirements, with a "lead time" of one to three weeks. The contracts stated that all of Monarch's employees and subcontractors were "properly insured for personal and property liability."

¶ 7    Plaintiff contacted the condominium association on September 9, 2019 regarding her projects, and they exchanged a number of emails between September 12 and September 17, 2019. On September 17th, plaintiff accompanied a Monarch employee to a meeting with the association to discuss the association's requirements for the construction work. The following week, after

meeting with an employee of the association's management company, Monarch representatives worked to obtain the approvals required for the projects. The management company and plaintiff sent numerous emails to Monarch between September 17 and September 27, 2019, requesting specific insurance and license information regarding its employees and subcontractors. Monarch provided some documents in response.

¶ 8      On September 27, 2019, the association notified plaintiff that it had not yet approved the start of construction due to issues concerning insurance requirements and licensing. That same day, plaintiff cancelled the contract with Monarch because construction had not commenced within the three-week "lead time" provided in the contract. She demanded a full refund of her $4,200 total down payment. Monarch returned $1,350 to plaintiff but retained $2,850 as compensation for the time, effort, and expenses it incurred regarding the contract. In an account overview sent to plaintiff, Monarch stated that it incurred costs of $450 for two site visits, and $2,400 for "3 licenses and COI (@$800)."

¶ 9      In a letter dated November 1, 2019, plaintiff demanded that Monarch immediately return "the down payment balance of $2,850." Monarch did not return the funds.

¶ 10     Plaintiff filed a five-count complaint against Monarch alleging 1) a violation of the Home Repair and Remodeling Act (Home Repair Act) (815 ILCS 513 *et seq*. (West 2022)), which she voluntarily dismissed at trial; 2) a violation of the Consumer Fraud Act, where Monarch failed to commence or complete the work per the contracts, and upon written demand by plaintiff, failed to return the down payment balance of $2,850; 3) failure to provide plaintiff with a "Home Repair: Know Your Consumer Rights" pamphlet as required by the Home Repair Act; 4) fraudulent inducement where Monarch knowingly and falsely stated that it was properly insured and its tradesmen were properly licensed to perform the work in the contract, that it had an A+ rating with

the Better Business Bureau, and that the total contract price reflected the projects' true cost; and 5) breach of contract in failing to hire or provide properly licensed and insured workers as required by the city of Chicago, and failing to start or complete the work listed in the contract.

¶ 11    The case proceeded to a bench trial. In its written order, the trial court found against plaintiff on Count II, her consumer fraud claim. The court noted that plaintiff alleged that Monarch "made material misrepresentations to [her] that certain subcontractors would be properly licensed and insured and that Monarch never intended to use properly licensed and insured contractors." The court, however, found that the evidence did not establish such intent. Rather, "the evidence presented at trial indicates that Monarch continually worked with the Association's management company to provide the licensing and insurance information requested. This effort was only terminated because Plaintiff cancelled the Contract."

¶ 12    Regarding Count III, the trial court found that Monarch's "mere failure to provide the Brochure *** does not automatically absolve Plaintiff of some responsibility with respect to the contract." It concluded, in defendants' favor, that "any damages suffered by Plaintiff were not the result of Monarch's violation of the" Home Repair Act.

¶ 13    On the fraudulent inducement count, the court found that Monarch's inability to resolve the licensing and insurance issues "did not rise to the level of an intentional fraudulent misrepresentation." As to the licensing and insurance requirements, there was no evidence that Monarch had knowledge of the association's requirements prior to entering the contract with plaintiff. "Accordingly, it would be difficult for Monarch to misrepresent its ability to meet these requirements prior to knowing the requirements."

¶ 14    Moreover, Monarch made "a good faith effort to provide the Association the necessary licensure and insurance information. In fact, Monarch was still in the process of working with the

Association when Plaintiff cancelled the Contract." The trial court further found that "the implied covenant of good faith and fair dealing that underlies any contract in Illinois dictated that Plaintiff try to work through the issue with the Association's requirements before abruptly cancelling the Contract." The court found in favor of defendants on Count IV.

¶ 15 As for plaintiff's breach of contract claim, the trial court found that Monarch was entitled to deduct its reasonable costs for site visits and licensing procedures from the total down payment. However, the court determined that Monarch's assessment of such costs was "excessive and violates the covenant of good faith and fair dealing inherent in every contract in this State." The trial court noted that the entire price of the contracts totaled $8,000, so that the $2,850 claimed by Monarch comprised over 35% of the total contract price. It determined that $250 for the two site visits, and $200 for efforts to obtain the association's approval were reasonable. Therefore, the court awarded plaintiff $2,400, and found that "both parties shall bear its own costs."

¶ 16 Plaintiff filed a motion for reconsideration, which the trial court denied. In its order, the court clarified that it did not award damages to plaintiff on Count V due to Monarch's failure to complete the work under the contracts. Rather, it found that Monarch breached the covenant of good faith and fair dealing by withholding an excessive amount from plaintiff's down payment for costs related to site visits and efforts to comply with the association's requirements. The trial court reiterated that it "did not find that Defendant Monarch breached the contract by failing to complete the work. In fact, [it] found that Plaintiff also violated the covenant of good faith and fair dealing by abruptly cancelling the contract instead of making a good faith effort to work through the insurance and licensing issues raised by Plaintiff's condominium association."

¶ 17 Plaintiff now appeals.

¶ 18                                   II. ANALYSIS

¶ 19     Initially, defendants contend that we should dismiss this appeal for lack of jurisdiction where plaintiff failed to file her notice of appeal within 30 days after entry of the trial court's order denying her motion to reconsider. See Illinois Supreme Court Rule 303(a) (eff. July 1, 2017) (providing that a notice of appeal must be filed within 30 days after entry of the order disposing of a timely filed posttrial motion). The trial court denied plaintiff's motion to reconsider on May 12, 2023, and 30 days from that date was June 11, 2023. Plaintiff filed her notice of appeal on June 12, 2023. Defendants therefore contend that plaintiff's notice of appeal was untimely, and this court lacks jurisdiction to consider her appeal. See *Huber v. American Accounting Association*, 2014 IL 117293, ¶ 19 (asserting that the timely filing of a notice of appeal is jurisdictional).

¶ 20     However, June 11, 2023 fell on a Sunday. If the filing deadline falls on a Saturday, Sunday, or holiday, the deadline is extended to the next business day. See 5 ILCS 70/1.11 (West 2022); *Galaviz v. Mietus Restoration, Inc.*, 2023 IL App (1st) 220514, ¶ 25. Since plaintiff filed her notice of appeal on the next business day, Monday June 12, 2023, it was timely filed.

¶ 21     Defendants also argue that we should dismiss plaintiff's appeal where she failed to provide a transcript of the proceedings or a bystander's report, nor did she include the trial exhibits in the record. They further contend that plaintiff's brief violated Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020) by failing to provide citations to the record for certain arguments and failing to cite to legal authority on other points.

¶ 22     The supreme court rules are mandatory and not merely suggestions. *Ryan v. Katz*, 234 Ill. App. 3d 536, 537 (1992). Although this court may strike portions of an appellant brief or dismiss an appeal for violating Rule 341, such sanctions are appropriate only when the violations preclude our review. *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005). We do not find this to be the

case here. However, it is plaintiff's duty, as the appellant, to present this court with a complete record of the proceedings below. *Rosestone Investments, LLC v. Garner*, 2013 IL App (1st) 123422, ¶ 31. Accordingly, where the record is incomplete, we will resolve any doubts against the appellant and presume that the trial court's judgment conformed both to the law and to the facts of the case. *Id*. Moreover, we need not consider any arguments unsupported by legal authority or legal analysis. See Rule 341(h)(7) (eff. July 1, 2008) (requiring that the appellant's argument contain his or her contentions "and the reasons therefor, with citation of the authorities and the pages of the record relied on," and "points not argued are waived").

¶ 23    On appeal, plaintiff challenges only the trial court's determination on Count II of her complaint. She contends that the court erred in finding that Monarch did not violate section 2Q(c) of the Consumer Fraud Act. This issue requires us to construe a statutory provision.

¶ 24    The primary objective of statutory interpretation is to ascertain and give effect to legislative intent. *Accettura v. Vacationland*, Inc., 2019 IL 124285, ¶ 11. The most reliable indicator of that intent is the statutory language itself, given its plain and ordinary meaning. *Id*. Courts "must construe the statute so that each word, phrase, and sentence is given a reasonable meaning and not rendered superfluous." *1550 MP Road LLC v. Teamsters Local Union No. 700*, 2019 IL 123046, ¶ 31. Furthermore, we will not read into the statute's plain language any exceptions, limitations, or conditions that conflict with the expressed intent. *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009). We review questions of statutory interpretation *de novo*. *Avery v. State Farm Mutual Automobile Insurance Co*., 216 Ill. 2d 100, 179 (2005).

¶ 25    Section 2Q provides, in pertinent part, that:

"A person engaged in the business of home repair, as defined in Section 2(a)(1) of the Home Repair Fraud Act, who fails or refuses to commence or complete work under a

contract or an agreement for home repair, shall return the down payment and any additional payments made by the consumer within 10 days after a written demand sent to him by certified mail by the consumer or the consumer's legal representative or by a law enforcement or consumer agency acting on behalf of the consumer." 815 ILCS 505/2Q(c) (West 2022).

According to the plain language of the provision, a person engaged in the home repair business violates section 2Q(c) if he or she "fails or refuses to commence or complete work under a contract or an agreement for home repair," and does not return the down payment or any additional payment made by the consumer within 10 days after receiving the consumer's written demand. See 815 ILCS 505/2Q(c) (West 2022).

¶ 26    It is undisputed that Monarch did not commence or complete construction work on September 27, 2019, when plaintiff cancelled the contract. Plaintiff thus argues that pursuant to the plain language of section 2Q(c), Monarch's failure to commence work, in and of itself, should be construed as a failure to commence or complete work under the provision.

¶ 27    By its clear terms, however, section 2Q(c) applies to a party "who fails or refuses to commence or complete work *under a contract or an agreement*." (Emphasis added.) 815 ILCS 505/2Q(c) (West 2022). The phrase "fails or refuses to commence or complete work" is qualified by the next phrase, "under a contract or agreement." Accordingly, the failure or refusal to commence or complete work under the provision means conduct that constitutes a breach of contract. See Restatement (First) of Contracts § 312 (1932) (stating that "[a] breach of contract is a non-performance of any contractual duty of immediate performance*** and may take place by failure to perform acts promised, by prevention or hindrance, or by repudiation"). Section 2Q(c) therefore applies when a party engaged in the home repair business breaches a contract by failing

or refusing to commence or complete work, and then fails to return the down payment following the breach. Whether Monarch breached the contract is a question of fact, and we will not disturb the trial court's determination unless it is against the manifest weight of the evidence. *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 72 (2006).

¶ 28 In its written order, the trial court made the following findings: 1) Monarch is engaged in the home repair business, 2) plaintiff and Monarch executed a contract to perform construction work in plaintiff's condominium, 3) the condominium association required Monarch's workers to possess certain licensing and insurance credentials, 4) no construction work could begin without satisfying those requirements, 5) as of September 27, 2019, Monarch was in the process of obtaining the required credentials but had not yet met the association's requirements, 6) as of September 27, 2019, the association had not approved the start of construction, 7) plaintiff cancelled the contract with Monarch that same day and demanded, by certified mail, a full refund of her $4,200 total down payment, 8) no evidence at trial indicated that plaintiff "made any significant efforts to resolve the outstanding approval issues," and 9) Monarch returned $1,350 to plaintiff, but retained $2,850 as compensation for expenses it incurred for site visits and for its attempts to meet the association's requirements.

¶ 29 The trial court determined that Monarch's inability to procure the necessary credentials did not constitute a breach of contract. Rather, work had not commenced because Monarch had not met the association's licensing and insurance requirements as of September 27, 2019. The court found that Monarch exhibited "a good faith effort" to provide the information to the association and was "still in the process of working with the Association when Plaintiff cancelled the Contract." It found no intent by Monarch to misrepresent that certain subcontractors would be properly licensed and insured, or to use ineligible contractors. Instead, "Monarch continually

worked with the Association's management company to provide the licensing and insurance information requested. This effort was only terminated because Plaintiff cancelled the Contract." The trial court further found that "the implied covenant of good faith and fair dealing that underlies any contract in Illinois dictated that Plaintiff try to work through the issue with the Association's requirements before abruptly cancelling the Contract."

¶ 30 We cannot say that the trial court's determination was against the manifest weight of the evidence. The record contains no transcript of the bench trial, nor is there a bystander's report. We also do not have the exhibits presented at trial. Plaintiff, as appellant, has the burden to present a sufficiently complete record of the proceedings at trial to support her claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). Since we are unable to determine whether the trial court's factual findings were against the manifest weight of the evidence without a complete record of the proceedings, we "must presume the circuit court had a sufficient factual basis for its holding and that its order conforms with the law." *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 157, 839 N.E.2d 524, 532 (2005). Therefore, we affirm the trial court's determination that Monarch's failure to perform was not a breach of the contract. Without such a breach, section 2Q(c) of the Consumer Fraud Act does not apply.

¶ 31 Although the trial court found no breach of contract by Monarch, and thus no violation of the Consumer Fraud Act, the court determined that Monarch should not have retained $2,850 of plaintiff's down payment as reimbursement for its expenses. Instead, the trial court found that $450 was a reasonable amount related to site visits and Monarch's attempts to obtain the licenses and insurance required by the association. Therefore, it awarded plaintiff the remaining $2,400. Neither plaintiff nor defendants challenge the trial court's determination to award plaintiff actual damages.

¶ 32    Plaintiff, however, argues that she should have received the full $2,850, as well as punitive damages and attorney fees and costs permitted by the Consumer Fraud Act. She also argues that she should be able to recover all remedies from Long, the sole owner/manager of Monarch, by piercing the corporate veil.

¶ 33    Plaintiff provides no argument or legal support to show that the trial court's award of $2,400 for actual damages was against the manifest weight of the evidence. "Bare contentions without argument or citation to relevant authority do not merit consideration on appeal." *United Legal Foundation v. Pappas*, 2011 IL App (1st) 093470, ¶ 15. Likewise, plaintiff's mere contention that Long should be held responsible for the judgment against Monarch, with no legal analysis or reference to specific facts, does not merit our consideration. As for plaintiff's claim for punitive damages and fees and costs under the Consumer Fraud Act, since we affirm the trial court's finding that Monarch did not violate section 2Q(c), she is not entitled to such an award.

¶ 34                                III. CONCLUSION

¶ 35    For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 36    Affirmed.