NOTICE
Decision filed 12/21/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 230714

NO. 5-23-0714

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 23-CF-1169 |
| | ) | |
| MONET V. JOHNSON, | ) | Honorable |
| | ) | Brett N. Olmstead, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court, with opinion.
Presiding Justice Vaughan and Justice McHaney concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, Monet V. Johnson, appeals the September 21, 2023, order of the circuit court of Champaign County granting the State's petition to deny pretrial release and ordering him detained. Pretrial release is governed by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act),[1] as codified in article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Code); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). On

_____

    [1]"The Act has also sometimes been referred to in the press as the Pretrial Fairness Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public act." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

1

appeal, the defendant argues that the circuit court abused its discretion when it denied his pretrial release, asserting that the State failed to prove by clear and convincing evidence that he posed a safety threat if released, which no conditions could mitigate. For the following reasons, we affirm the order of the circuit court of Champaign County.[2]

¶ 2                                    I. BACKGROUND

¶ 3      On September 18, 2023, the defendant was charged with one count of the offense of armed violence in violation of section 33A-2(a) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/33A-2(a) (West 2022)), one count of the offense of unlawful possession of weapons by a felon in violation of section 24-1.1(a) of the Criminal Code (*id.* § 24-1.1(a)), and one count of the offense of manufacture or delivery of a controlled substance in violation of section 401(c)(2) of the Illinois Controlled Substances Act (720 ILCS 570/401(c)(2) (West 2022)), in Champaign County, Illinois. On that same date, the State filed a verified petition to deny pretrial release alleging the proof is evident and the presumption great that the defendant committed and was charged with an offense listed in section 110-6.1(a) of the Code (725 ILCS 5/110-6.1(a) (West 2022)) and posed a real and present threat to the safety of any person or persons or the community. On September 20, 2023, the circuit court held a hearing on the State's verified petition.

¶ 4      In arguing at the hearing that the defendant posed a real and present threat to the safety of the community, the State posited that a vulnerable person could be injured by ingesting the cocaine that the defendant sold or that another individual could attack the defendant's apartment in an

---

[2]Pursuant to Illinois Supreme Court Rule 604(h)(5) (eff. Dec. 7, 2023), our decision in this case was due on or before December 8, 2023, absent a finding of good cause for extending the deadline. Based on the high volume of appeals under the Act currently under the court's consideration, as well as the complexity of issues and the lack of precedential authority, we find there to be good cause for extending the deadline.

2

attempt to steal the cocaine and harm the people who live in the residence. The State proffered that it had applied for a search warrant based on numerous controlled purchases of cocaine that were made by the defendant to a source over a two-month period. Three of the controlled purchases were conducted out of the apartment where the defendant was arrested. The source reported purchasing crack cocaine from the defendant on at least 50 occasions over the past few months. When officers arrived to execute the search warrant, they found that the defendant was armed with a loaded .357 magnum revolver, held in the waistband of his pants, while aware that he was prohibited from possessing the same. The defendant was holding 8.9 grams of a substance that tested positive for cocaine in one pocket and $1381 in cash in another pocket. The defendant told police that he found the firearm in his grill. The defendant admitted to selling crack cocaine in order to prepare for a new child. There was a woman and a minor child in the apartment where the defendant was arrested. The State argued that the defendant was placing the community and the people who live in his residence in danger by his behaviors and that no conditions could mitigate the threat in light of the continuation of the defendant's illegal behaviors over a course of months. Further, the State proffered the defendant's criminal history, spanning from 1999 through 2007.

¶ 5 Defense counsel agreed that the facts presented by the State were accurate but noted that the defendant did not use his firearm against the police, admitted to possession of the firearm, and surrendered it. Defense counsel further argued that the defendant was not a danger to the community and should be released from custody to care for his minor child.

¶ 6 The circuit court issued an order, finding by clear and convincing evidence that the proof was evident or the presumption great that the defendant had committed a detainable offense pursuant to section 110-6.1(a) of the Code. *Id.* In support thereof, the circuit court specifically found as follows:

"From August to September of this year, police coordinated three controlled buys of cocaine from [the defendant]. The source they worked with on these buys indicated they had purchased crack cocaine from [the defendant] more than 50 times in the prior few months. The police executed a search warrant on September 15, 2023, and found [the defendant], who had on his person $1,381 cash, 8.9 grams of cocaine, and a loaded Colt Python 357 Magnum handgun. [The defendant] admitted to [the] police that he knew he could not possess the firearm and that he had been selling crack cocaine. [The defendant] is a convicted felon who is prohibited from possessing firearms."

¶ 7    The circuit court further found that the defendant posed a real and present threat to the safety of any person or persons or the community and that no conditions or combination of conditions set forth in section 110-10 of the Code (*id.* § 110-10) could mitigate the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, specifically finding as follows:

"[The defendant's] criminal history includes six prior prison sentences. Three were for violent felonies and one was for being a felon in possession of a firearm, for which [the defendant] was sentenced to five years in prison. He also has prior violent convictions for Domestic Battery and Battery. [The defendant] knew he could not legally possess a firearm because he had previously been sentenced to prison for doing just that. There are facts providing an incentive for [the defendant] to comply with conditions of release, most notably his employment, his medical condition (hernia), his responsibilities to a very young child, and the age of much of his criminal history. On the whole, however, the facts presented here show a prolific cocaine dealer with a history of violent crimes, illegally arming himself with a loaded handgun to protect his unlawful enterprise, despite knowing

4

that possessing the loaded gun would lead to incarceration as it had done in the past. He presents a danger to the community that conditions of release cannot mitigate."

¶ 8     On September 21, 2023, the defendant filed a timely notice of appeal, utilizing the "Notice of Pretrial Fairness Act Appeal 604(h) (Defendant as Appellant)" standardized form provided by the Illinois Supreme Court. Ill. S. Ct. R. 604(h)(2) (eff. Sept. 18, 2023). The Office of the State Appellate Defender (OSAD) was appointed to represent defendant in this appeal and filed a memorandum in support of the Rule 604(h) appeal. The State filed a response to the defendant's appeal.

¶ 9                                        II. ANALYSIS

¶ 10     Pretrial release is governed by article 110 of the Code, as amended by the Act. 725 ILCS 5/art. 110 (West 2022). Under the Code, a defendant's pretrial release may only be denied in certain statutorily limited situations. See *id.* §§ 110-2(a), 110-6.1. After filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great (1) that the defendant has committed a qualifying offense, (2) that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and (3) that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e), (f). The circuit court may order a defendant detained pending trial if the defendant is charged with a qualifying offense and the circuit court concludes that the defendant poses a real and present threat to the safety of any person or the community, based on the specific articulable facts of the case (*id.* § 110-6.1(a)(1)-(7)).

5

¶ 11    The statute provides a nonexclusive list of factors that the circuit court may consider in making a determination of "dangerousness," *i.e.*, that the defendant poses a real and present threat to any person or the community. *Id.* § 110-6.1(g). In making a determination of dangerousness, the court may consider evidence or testimony as to factors that include, but are not limited to, (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether, at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code (*id.* § 110-5). *Id.* § 110-6.1(g).

¶ 12    If the circuit court finds that the State proved a valid threat to a person's safety or the community's safety and/or the defendant's likely willful flight to avoid prosecution, or the defendant's failure to abide by previously issued conditions of pretrial release, then the circuit court must determine what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In reaching its determination, the circuit court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the specific, real, and present

6

threat to any person that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive but provides that no single factor or standard may be used exclusively to order detention. *Id.* § 110-6.1(f)(7).

¶ 13 If the circuit court determines that the defendant should be denied pretrial release, the circuit court is required to make written findings summarizing the reasons for denying pretrial release. *Id.* § 110-6.1(h). The circuit court's determination regarding pretrial release will not be reversed absent an abuse of discretion. *People v. Swan*, 2023 IL App (5th) 230766, ¶ 11 (citing *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977), and *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 15 (setting a similar standard of review for the sentence imposed on the defendant after the circuit court's consideration of statutory factors and evidence presented at sentencing)). Likewise, questions regarding whether the circuit court properly balanced one or more of the statutory factors in determining dangerousness and/or conditions of release are reviewed for an abuse of discretion. *Id.* (citing *People v. Simmons*, 2019 IL App (1st) 191253, ¶¶ 9, 15 (in considering circuit court's decision to deny bail, the reviewing court will not substitute its judgment for that of the circuit court merely because it would have balanced the appropriate factors differently)). An abuse of discretion occurs when the decision of the circuit court is arbitrary, fanciful, or unreasonable or when no reasonable person would agree with the position adopted by the circuit court. *Id.* (citing *Simmons*, 2019 IL App (1st) 191253, ¶ 9).

¶ 14 Additionally, the circuit court's finding that the State presented clear and convincing evidence showing that mandatory conditions of release would fail to protect any person or the community will not be reversed unless those findings are against the manifest weight of the evidence. *Id.* ¶ 12 (citing *In re C.N.*, 196 Ill. 2d 181, 208 (2001) (setting a similar standard of

review for requirement of clear and convincing evidence by the State in juvenile proceedings)). " 'A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented.' " *Id.* (quoting *People v. Deleon*, 227 Ill. 2d 322, 332 (2008)). "Under the manifest weight standard, we give deference to the [circuit] court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses." *Deleon*, 227 Ill. 2d at 332.

¶ 15     On appeal, the defendant argues that the circuit court abused its discretion when it denied his pretrial release, asserting that the State failed to prove by clear and convincing evidence that he posed a safety threat if released, which no conditions could mitigate. The defendant claims that the generic public health risks posed by the sale of illegal psychoactive drugs and the risk of violence against drug dealers is not a "threat to the safety" of persons or the community, as contemplated by the Act for purposes of detention. In support of his claim, the defendant argues that the circuit court's findings were based on a misreading of the Act. According to the defendant's argument, when the Act speaks of a "threat to the safety" to a person, persons, or the community, it means a threat of unlawful physical violence by the defendant. The defendant argues that the public health risk posed by the sale and ingestion of illegal psychoactive drugs is not in and of itself such a threat. Neither is the risk that violence will be used against the defendant, absent any risk that the defendant himself will unlawfully use violence. According to the defendant, the circuit court could only find that a defendant poses a real and present threat to safety when there is a real and present threat that he will commit violent criminal acts.

¶ 16     In response, the State argues that nothing in the statute's language states or implies that only defendants who pose a direct threat of committing violent criminal acts are detainable. The State further argues that the sale of drugs affects both the intentional and voluntary users of cocaine

as well as those who may involuntarily ingest or come into contact with the substance and that the circuit court's consideration of the possibility that the defendant's home would be attacked was not the circuit court's sole consideration but was, nevertheless, an appropriate factor to be considered.

¶ 17    A. The Circuit Court's Findings That the Defendant Posed a Real and Present Threat

to the Safety of the Community

¶ 18    In support of his argument on the meaning of "threat to safety" as contemplated by section 110-6.1 of the Code, the defendant cites the factors to be considered in making a determination of dangerousness pursuant to section 110-6.1(g) of the Code and the triggering offenses that can authorize detention. The defendant argues that the triggering offenses, in conjunction with the list of dangerousness factors, indicate a legislative intent that a "threat to the safety" means a risk that the defendant will commit violent criminal acts. The defendant argues that the public health risk posed by sale of illegal psychoactive drugs, and the risk of unlawful violence against the defendant while engaged in the sale of illegal drugs, is not a threat to safety intended by the legislature to warrant detention based on a determination of dangerousness.

¶ 19    We review issues of statutory construction *de novo*. *People v. Kastman*, 2022 IL 127681, ¶ 29. "A court's fundamental objective in addressing issues of statutory construction is to ascertain and give effect to the legislature's intent." *People v. Taylor*, 2023 IL 128316, ¶ 45. In this pursuit, we "may consider the reason and necessity for the law, the evils it was intended to remedy, and its ultimate aims." (Internal quotation marks omitted.) *Id.* We presume that "the General Assembly, in enacting legislation, did not intend absurdity, inconvenience, or injustice." *Kastman*, 2022 IL 127681, ¶ 30.

9

¶ 20   The supreme court has commented that the bail clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 9) concerns the individual rights of criminal defendants, "but in its 'real and present threat' exception, it acknowledges the State's interest in public safety." *Rowe*, 2023 IL 129248, ¶ 41. The supreme court went on to note that the Act's pretrial release provisions complement the bail clause in that regard, by allowing the State to seek, and the circuit court to order, pretrial detention of certain criminal defendants. *Id.* ¶ 30 (discussing 725 ILCS 5/110-2, 110-6.1 (West 2022)).

¶ 21   The defendant does not cite any legal authority to support his proposed construction of the dangerousness finding required by the Code's provision on pretrial detention, and his arguments do not justify adopting such a construction. Reading into the statute the requirement that the State prove that the defendant will commit a violent offense would impose a material change in the plain language of the Code. While the defendant claims that the statutory factors under section 110-6.1(g) show "unvarying focus on the defendant's unlawful violent acts to another person's body without their consent," the plain language of the statute contradicts this assertion. Section 110-6.1(g) of the Code includes factors three through eight, which fail to make any reference to violence. 725 ILCS 5/110-6.1(g)(3)-(8) (West 2022). Additionally, while the first factor references violence, it begins with the catchall phrase "[t]he nature and circumstances of any offense charged." *Id.* § 110-6.1(g)(1). We reject the defendant's invitation to read into the Code that "a real and present threat to the safety of any *** persons or the community" must be limited to the threat of the defendant committing violent criminal acts. *Id.* § 110-6.1(g). The intent of the legislature is clear from the plain language of the statute—that the circuit court may deny a defendant pretrial release only if the defendant's pretrial release poses a real and present threat to the safety of any person, persons, or the community. *Id.* § 110-6.1(a)(1). If the legislature intended

10

that pretrial release be denied only where the defendant poses a real and present threat of committing "violent criminal acts," the legislature could have added that language as easily as the defendant. Absent such language, and considering the Act as a whole, we are not persuaded by the defendant's proposed construction.

¶ 22                                B. Denial of Pretrial Release

¶ 23    The defendant's remaining argument regarding the State's failure to prove, by clear and convincing evidence, that the defendant posed a threat to safety is dependent on what he describes as the "proper interpretation of the statute," an interpretation that we have rejected. Further, the defendant does not argue that the circuit court did not properly weigh the factors relating to conditions, other than to assert that the defendant was not a safety threat.

¶ 24    Contrary to the defendant's argument, the record demonstrates that there was evidence supporting the circuit court's determination that the defendant posed a real and present threat to the community. The circuit court made written findings that included its consideration of the defendant's six prior prison sentences. Three were for violent felonies, and one was for being a felon in possession of a firearm. The circuit court made further written findings about the danger that the defendant's actions posed to the community.

¶ 25    The circuit court properly considered the nature of the offenses charged, including whether the offenses constituted crimes of violence, involved a weapon, or were a sex offense, as required by section 110-6.1(g)(1) of the Code. The circuit court specifically determined that the defendant was selling drugs in the community, which posed a danger to others in the community who may purchase and use those dangerous drugs and that those in the community may be at risk of crimes committed by others based upon the inherent danger present in the drug trade. Each of the defendant's charges provoke the circuit court to consider public safety.

11

¶ 26    The defendant was charged with manufacture or delivery of a controlled substance (720 ILCS 570/401(c)(2) (West 2022)), under the Illinois Controlled Substances Act. The legislative intent of the Illinois Controlled Substances Act states, in relevant part, that it was passed:

> "recognizing the rising incidence in the abuse of drugs and other dangerous substances and its resultant damage to the peace, health, and welfare of the citizens of Illinois, *** [and to] penalize most heavily the illicit traffickers or profiteers of controlled substances, who propagate and perpetuate the abuse of such substances with reckless disregard for its consumptive consequences upon every element of society." *Id.* § 100.

¶ 27    In addition to possessing and selling dangerous drugs, the defendant possessed a loaded firearm, which is classified as a dangerous weapon under the law. *People v. Ross*, 229 Ill. 2d 255, 275 (2008). The defendant possessed the loaded firearm despite being prohibited from doing so based on his felon status (720 ILCS 5/24-1.1(a) (West 2022)) and had been previously incarcerated based on the same offense. The purpose of the unlawful possession of weapons by a felon statute " 'is to protect the health and safety of the public by deterring possession of weapons by convicted felons, a class of persons that the legislature has determined presents a higher risk of danger to the public when in possession of a weapon.' " *People v. Garvin*, 2013 IL App (1st) 113095, ¶ 14 (quoting *People v. Crawford*, 145 Ill. App. 3d 318, 321 (1986), citing *Rawlings v. Department of Law Enforcement*, 73 Ill. App. 3d 267 (1979)).

¶ 28    Finally, the defendant was charged with armed violence (720 ILCS 5/33A-2(a) (West 2022)). Our supreme court recognized that the passage of the armed violence statute was the legislature's "emphatic response to the growing incidence of violent crime." *People v. Harre*, 155 Ill. 2d 392, 395 (1993). The legislature recognized that a felon with immediate access to a

12

dangerous weapon was predisposed to use such a weapon when confronted with resistance, either from victims, law enforcement representatives, or other criminals. *Id.*

¶ 29    The circuit court's order indicated that it considered "all factors set forth in 725 ILCS 5/110-6.1 and otherwise allowed by law." The circuit court properly considered the history and characteristics of the defendant, acknowledging the defendant's extensive criminal history, including several violent offenses. The circuit court considered the safety threat that the defendant's actions posed to the community at large, a small child present where the defendant had been selling drugs, as well as others present in the apartment, and the nature of those threats. The circuit court considered whether the defendant was known to possess or have access to weapons. The defendant was found in possession of a weapon and lived in a dangerous neighborhood where, according to the State's proffer, he claimed to have found the firearm he possessed in his grill. The circuit court found that the defendant's criminal history included six prior prison sentences, three for violent felonies and one for being a felon in possession of a firearm. The circuit court noted that the defendant was "a prolific cocaine dealer with a history of violent crimes, illegally arming himself with a loaded handgun to protect his unlawful enterprise, despite knowing that possessing the loaded gun would lead to incarceration as it had done in the past." The facts specifically outlined by the circuit court and contained in the record support the circuit court's finding that the defendant posed a danger to the community and that, based on the defendant's history and characteristics, there was a low likelihood of compliance by the defendant with conditions of pretrial release. Thus, the circuit court appropriately found that no conditions of release could mitigate that danger.

¶ 30    Based on our review of the record and any memoranda submitted, we find that the circuit court's findings—that the defendant met the dangerousness standard, posing a real and present

13

threat to the safety of any person or the community, and that no less restrictive conditions would avoid the real and present threat to the safety of any person or the community—were not error. We have thoroughly reviewed the record on appeal and conclude that it does not demonstrate that the circuit court's judgment denying the defendant pretrial release was arbitrary, fanciful, or unreasonable or that no reasonable person would agree with the position adopted by the circuit court. Therefore, the circuit court's order denying pretrial release was not an abuse of discretion.

¶ 31                                    III. CONCLUSION

¶ 32     For the foregoing reasons, we affirm the September 21, 2023, detention order of the circuit court of Champaign County.

¶ 33     Affirmed.

*People v. Johnson*, 2023 IL App (5th) 230714

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Champaign County, No. 23-CF-1169; the Hon. Brett N. Olmstead, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Carolyn R. Klarquist, and Benjamin Wimmer, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino, David J. Robinson, and Kena Bere, State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |