NOTICE
Decision filed 04/09/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 231093-U

NO. 5-23-1093

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Edgar County. |
| | ) | |
| v. | ) | No. 23-CF-138 |
| | ) | |
| ROBERT E. PORTER, | ) | Honorable |
| | ) | Matthew L. Sullivan, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court.
Justice McHaney concurred in the judgment.
Presiding Justice Vaughan specially concurred.

**ORDER**

¶ 1    *Held*: The order of the circuit court of Edgar County denying the defendant's pretrial release is vacated and remanded where the trial court erred in granting the State's untimely motion to deny pretrial release and that the error affected substantial rights of the defendant under the second prong of the plain-error doctrine.

¶ 2    The defendant, Robert Porter, appeals the trial court's order regarding his pretrial release pursuant to Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act).[1] See also Pub. Acts 101-652, § 10-255, 102-1104, § 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting

_____

[1]"The Act has also sometimes been referred to in the press as the Pretrial Fairness Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public act." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

1

effective date as September 18, 2023). Pretrial release is governed by the Act as codified in article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.* (West 2022)).

¶ 3        A defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1. After filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that defendant has committed a qualifying offense, that defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent defendant's willful flight from prosecution. *Id.* § 110-6.1(e), (f). The trial court may order a defendant detained pending trial if defendant is charged with a qualifying offense, and the court concludes defendant poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(a)(1)-(7)) or there is a high likelihood of willful flight to avoid prosecution (*id.* § 110-6.1(a)(8)). If the court determines that defendant should be denied pretrial release, the court is required to make written findings summarizing the reasons for denying pretrial release. *Id.* § 110-6.1(h).

¶ 4        The Code provides a nonexclusive list of factors that the trial court may consider in making a determination of "dangerousness," *i.e.*, that defendant poses a real and present threat to any person or the community. *Id.* § 110-6.1(g). In making a determination of dangerousness, the court may consider evidence or testimony as to factors that include, but are not limited to, (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of defendant; (3) the identity of any person to whom defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to defendant, together with the circumstances surrounding

2

the statements; (5) the age and physical condition of defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code (*id.* § 110-5). *Id.* § 110-6.1(g).

¶ 5     In order to reverse a trial court's finding that the State presented clear and convincing evidence showing that mandatory conditions of release would fail to protect any person or the community, and/or that defendant had a high likelihood of willful flight to avoid prosecution, or defendant failed to comply with previously issued conditions of pretrial release thereby requiring a modification or revocation of the previously issued conditions of pretrial release, the reviewing court must conclude that the trial court's findings were against the manifest weight of the evidence. See *In re C.N.*, 196 Ill. 2d 181, 208 (2001) (setting a similar standard of review for requirement of clear and convincing evidence by the State in juvenile proceedings). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). "Under the manifest weight standard, we give deference to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses." *Id.* Additionally, questions regarding whether the court properly considered one or more of the aforementioned factors in determining dangerousness are reviewed for an abuse of discretion. See *People v. Simmons*, 2019 IL App (1st) 191253, ¶¶ 9, 15 (in considering the trial court's decision to deny bail, the reviewing court will not substitute its judgment for that of the trial court merely because it would have balanced the appropriate factors differently).

3

¶ 6    If the trial court finds the State proved a valid threat to a person's safety or the community's safety and/or defendant's likely willful flight to avoid prosecution, or defendant's failure to abide by previously issued conditions of pretrial release, then the court must determine what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a) (West 2022). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against defendant; (3) the history and characteristics of defendant;[2] (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive. *Id.* The trial court's pretrial release determination, modification of pretrial release determination, or revocation of pretrial release determination will not be reversed unless the determination was an abuse of discretion. See *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977); *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 15 (setting a similar standard of review for the sentence imposed on the defendant after the trial court's consideration of statutory factors and evidence presented at sentencing).

¶ 7    On August 25, 2023, the defendant was charged with six counts of possession of child pornography, all Class 2 felonies. The trial court set the defendant's bond at $500,000. On

---

[2] Defendant's history and characteristics include: "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A), (B) (West 2022).

4

September 11, 2023, the defendant was indicted on all six counts. On September 29, 2023, the State filed a petition for the defendant's pretrial detention arguing that the proof was evident or the presumption great that the defendant committed a detainable offense under the Act and that the defendant posed a real and present threat to the safety of any person or persons or the community. On October 20, 2023, the court held a detention hearing on the State's petition. On October 31, 2023, the court entered a written order for detention finding that the State offered by way of proffer that the defendant possessed approximately 50 videos and images of child pornography depicting children aged 5 to 10 years old naked or engaged in an act of sexual penetration. The videos and images were found on the defendant's phone. The defendant admitted to viewing child pornography and exchanging child pornography with other users. The court found that viewing and trading child pornography perpetuates the existence of child pornography, continues to harm the victims of child pornography, and stimulates the creation of new child pornography. The defendant admitted to viewing the child pornography as recently as a week before being taken into custody. The defendant admitted to viewing the child pornography videos for the purposes of sexual gratification. The defendant did have access to his 3-year-old granddaughter that he used to babysit. For these reasons offered by the State, the court found that the proof was evident or the presumption great that the defendant committed the offense of possession of child pornography under age 13 and that the defendant posed a real and present threat to the safety of the community based on the specific articulable facts listed above and no condition or combination of conditions could mitigate the real and present threat to the safety of the community. The defendant timely

appealed.[3] Ill. S. Ct. R. 604(h)(2) (eff. Oct. 19, 2023). On appeal, the defendant claims that the trial court's order denying pretrial release was in error.

¶ 8       In support, the defendant argues that the State's petition to deny pretrial release was untimely and that this court must reverse and remand. The State asserts that, because of the stay on the Act, the State was in compliance with the effect of the statute where it filed a petition for detention on the effective date of the Act or 21 days thereafter.

¶ 9       The record demonstrates that the defendant was charged with six counts of Class II felonies. As to dangerousness, the defendant made a full confession. He took ownership of the phone and indicated that he did use the application Kik, which was from where the tip in this case originated. The defendant said he would save videos and images from a messaging app or Kik and would go back and look at them. He indicated he had saved approximately 20 files. Digital forensic examiners found approximately 50 files and the children in the files ranged from 5 to 10 years old. He indicated he had been doing this for many years. The trial court found that a threat to the community existed and that detention was appropriate.

¶ 10      This court recently considered this issue in *People v. Rios*, 2023 IL App (5th) 230724. In applying a *de novo* standard of review, the *Rios* court noted that section 110-6.1 sets forth the prerequisites for denial of pretrial release. *Id.* ¶¶ 8-10. The court considered subsection (c)(1), which mandates the timing of a petition to detain, and states as follows:

> "(1) A petition may be filed without prior notice to the defendant at the first appearance before a judge, or within the 21 calendar days, except as provided in Section 110-6, after arrest and release of the defendant upon reasonable notice to defendant;

[3]Pursuant to Illinois Supreme Court Rule 604(h)(5) (eff. Dec. 7, 2023), our decision in this case was due on or before February 6, 2024, absent a finding of good cause for extending the deadline. Based on the high volume of SAFE-T Act appeals currently under the court's consideration, and due to the complexity of issues and the lack of precedential authority available, we find there to be good cause for extending the deadline.

provided that while such petition is pending before the court, the defendant if previously released shall not be detained." 725 ILCS 5/110-6.1(c)(1) (West 2022).

¶ 11    In interpreting subsection (c)(1), the court noted as follows:

"The plain language of this section sets forth the deadline for the State to file a petition to detain. The State may file a petition to detain at the time of the defendant's first appearance before a judge; no prior notice to the defendant is required. Alternatively, the State may file a petition to detain the defendant within 21 calendar days after the arrest and release of the defendant; however, reasonable notice is to be provided to the defendant under this circumstance. The exception to these timing requirements is set forth in section 110-6." *Rios*, 2023 IL App (5th) 230724, ¶ 10.

¶ 12    The court then discussed section 110-6, which addresses the revocation of pretrial release, the modification of conditions of pretrial release, and sanctions for violations of conditions of pretrial release. *Id.* ¶ 11. Section 110-6 provides, in pertinent part, as follows:

"(a) When a defendant has previously been granted pretrial release under this Section for a Class A misdemeanor, that pretrial release may be revoked only if the defendant is charged with a felony or Class A misdemeanor that is alleged to have occurred during the defendant's pretrial release after a hearing on the court's own motion or upon the filing of a verified petition by the State.

* * *

(b) If a defendant previously has been granted pretrial release under this Section for a Class B or Class C misdemeanor offense, a petty or business offense, or an ordinance violation and if the defendant is subsequently charged with a felony that is alleged to have occurred during the defendant's pretrial release or a Class A misdemeanor offense that is alleged to have occurred during the defendant's pretrial release, such pretrial release may not be revoked, but the court may impose sanctions under subsection (c).

* * *

(i) Nothing in this Section shall be construed to limit the State's ability to file a verified petition seeking denial of pretrial release under subsection (a) of Section 110-6.1 or subdivision (d)(2) of Section 110-6.1." 725 ILCS 5/110-6 (West 2022).

¶ 13    In interpreting section 110-6, the *Rios* court found that it did not apply to defendants who had not been released following arrest and had not committed any new offenses. *Rios*, 2023 IL App (5th) 230724, ¶ 12. Further, the exception to the timing requirements set forth in section 110-

7

6.1(c)(1) did not apply to such defendants. *Id.* Thus, "the State's petition to detain pursuant to section 110-6.1 was untimely, and the circuit court did not have the authority to detain [defendant] pursuant to the untimely petition." *Id.*

¶ 14    Here, the State's verified petition to detain pursuant to section 110-6.1 was untimely because the defendant had already appeared before a judge at the time of the filing of the State's verified petition. Additionally, as in *Rios*, section 110-6 does not apply to the defendant because he was not released following arrest and did not commit any new offenses. Accordingly, as in *Rios*, the exception to the timing requirements set forth in section 110-6.1(c)(1) does not apply to this defendant, and the State's petition to detain pursuant to section 110-6.1 was untimely.

¶ 15    Though the defendant admits that this issue was forfeited, this court can review the issue for plain error. "Under the second prong of plain-error review, a reviewing court may consider a forfeited error when the error is so serious that it deprives the defendant of a substantial right." *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 12 (citing *People v. Herron*, 215 Ill. 2d 167, 170 (2005)).

¶ 16    Therefore, we find that the trial court erred in granting the State's untimely motion to deny pretrial release and that the error affected substantial rights of the defendant under the second prong of the plain-error doctrine. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967); *People v. Piatkowski*, 225 Ill. 2d 551, 564-65 (2007); *Vingara*, 2023 IL App (5th) 230698, ¶ 23.

¶ 17    We vacate the order denying the defendant pretrial release and remand to the circuit court. On remand, the defendant may elect to stand on the terms of his original pretrial conditions—an election that would require no action on his part—or he may file a motion for a hearing under section 110-5(e) of the Code (725 ILCS 5/110-5(e) (West 2022)). *Vingara*, 2023 IL App (5th)

230698, ¶ 23. As this issue is dispositive, we will not consider the defendant's other claims of error.

¶ 18   Vacated and remanded.

¶ 19   PRESIDING JUSTICE VAUGHAN, specially concurring:

¶ 20   While I agree with my colleagues that the trial court erred in granting the State's untimely motion to deny pretrial release, I do not find such error "affected substantial rights of the defendant under the second prong of the plain-error doctrine" (*supra* ¶ 16). Accordingly, I would hold defendant to his forfeiture of the issue.

¶ 21   Whether this error constitutes second prong plain error was addressed in *People v. Presley*, 2023 IL App (5th) 230970, ¶¶ 27-42. In *Presley*, as here, the defendant claimed the trial court did not have authority to rule on the State's untimely petition requesting defendant's detainment. *Id.* ¶ 27. As shown in *Presley*, mere acceptance that an error occurred is insufficient by itself to find second prong error; the error must "affect the framework within which the trial proceeds." *Id.* ¶ 34. The rare instances where second prong error is found are those necessary to ensure "certain basic, constitutional guarantees" that "define the framework of any criminal trial" are met. *Id.* ¶ 35. In *Presley*, this court considered defendant's rights under both the United States and Illinois Constitutions and found that defendant's rights were not violated under either and therefore defendant was not entitled to relief under second prong plain error. *Id.* ¶¶ 39-42. In the current case, no additional or novel argument was presented. As such, I would hold the claimed error is not entitled to second prong plain error review.

¶ 22   Defendant also raised two other issues on appeal. His first issue asserted that the court erred in finding the State proved by clear and convincing evidence that defendant posed a real and present threat to the safety of any person or persons or the community. In regards to this issue,

9

defendant contends that the enumerated factors to be considered in making a dangerousness determination and the list of detainable offenses demonstrate that " 'threat to the safety' of persons or the public" means "risk of violent criminal acts." He explains that the list of factors that courts may consider in determining defendant's dangerousness has an "unvarying focus on the defendant's violent acts to another person's body without their consent" (see 725 ILCS 5/110-6.1(g) (West 2022)) and stresses the consideration of defendant's tendency toward "violent, abusive, or assaultive" behavior (*id.* § 110-6.1(g)(2), (9)). He further contends the vast majority of detainable offenses are intentional crimes of violence or crimes associated with intentional crimes of violence. See *id.* § 110-6.1(a)(2)-(4), (5). Defendant acknowledges this court recently held that dangerousness under the Act is not limited to a risk of violence (*People v. Johnson*, 2023 IL App (5th) 230714, ¶ 21), but argues we should reject *Johnson* due to its failure to engage with the *ejusdem generis* canon of statutory construction that states "when a statute lists several classes of persons or things but provides that the list is not exhaustive, the class of unarticulated persons or things will be interpreted as those 'others such like' the named persons or things" (*Board of Trustees of Southern Illinois University v. Department of Human Rights*, 159 Ill. 2d 206, 211 (1994)).

¶ 23    Despite defendant's arguments, we find no reason to depart from *Johnson*. The primary objective of statutory interpretation is to ascertain and give effect to the legislative intent. *Accettura v. Vacationland, Inc.*, 2019 IL 124285, ¶ 11. We "may consider the reason and necessity for the law, the evils it was intended to remedy, and its ultimate aims." (Internal quotation marks omitted.) *People v. Taylor*, 2023 IL 128316, ¶ 45. The most reliable indicator of such intent is found in the plain and ordinary meaning of the statutory language. *Accettura*, 2019 IL 124285, ¶ 11. "We do

10

not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the expressed intent." *Id.*

¶ 24 While the *Johnson* court did not explicitly mention "*ejusdem generis*," it engaged in such analysis and simply disagreed that all the factors under section 110-6.1(g) focused on unlawful violent acts to another person's body. See *Johnson*, 2023 IL App (5th) 230714, ¶ 21. *Johnson* explained that "[s]ection 110-6.1(g) of the Code includes factors three through eight, which fail to make any reference to violence." *Id.* (citing 725 ILCS 5/110-6.1(g)(3)-(8) (West 2022)). It further stated that while the first factor under section 110-6.1(g) refers to violence, it also "begins with the catchall phrase '[t]he nature and circumstances of any offense charged.' " *Id.* (quoting 725 ILCS 5/110-6.1(g)(1) (West 2022)). We agree with *Johnson* and find the similar argument presented in this appeal unpersuasive.

¶ 25 Under similar reasoning, we also disagree with defendant's argument that the list of detainable offenses demonstrates the legislature intended "threat of safety" to mean threat of violent behavior. While many of the listed detainable defenses relate to violent behavior, not all detainable offenses necessarily encompass violent behavior. For example, under section 110-6.1(a)(1), all felonies—other than forcible felonies—"for which, based on the charge or the defendant's criminal history, a sentence of imprisonment, without probation, periodic imprisonment, or conditional discharge, is required by law upon conviction" is a detainable offense. 725 ILCS 5/110-6.1(a)(1) (West 2022). Not all felonies involve violent behavior. See *People v. Belk*, 203 Ill. 2d 187, 193 (2003) (recognizing felonies can be classified as nonviolent); *People v. Washington*, 55 Ill. 2d 521, 524 (1973) (same); *People v. Lenoir*, 125 Ill. App. 3d 260, 267 (1984) (same). Another example is the detainable offense of involuntary servitude (725 ILCS 5/110-6.1(a)(6)(L) (West 2022)), as one can commit involuntary servitude without violent

behavior (see 720 ILCS 5/10-9(b)(4), (5) (West 2022)). Therefore, defendant's *ejusdem generis* argument is unpersuasive, as not all detainable offenses under the Act involve violent behavior or physical harm.

¶ 26    As *Johnson* holds, the plain language of the statute requires only that defendant's pretrial release pose a real and present threat to the safety of any person, persons, or the community. *Johnson*, 2023 IL App (5th) 230714, ¶ 21 (citing 725 ILCS 5/110-6.1(a)(1) (West 2022)). We therefore decline to depart from the statute's plain language and read into it a limitation not imposed by the legislature for such action is contrary to law. *Id.*; see *In re Justin M.B.*, 204 Ill. 2d 120, 124 (2003) ("If statutory language is plain, the court cannot read limitations or conditions into the statute.").

¶ 27    Defendant further argues that the State failed to prove that he posed a real and present threat to the safety of any person or the community where possession of child pornography does not pose an immediate threat to the safety of any child. He contends "[o]nce a piece of child pornography has been produced, the act of possessing, viewing, or copying it does not physically harm the depicted child a second time."

¶ 28    Defendant's arguments are misguided. The State did not need to prove that defendant actually harmed a child or that he would physically harm any of the children depicted in the child pornography he possessed. Rather, the State was required to prove that defendant "*pose[d]* a real and present threat to the safety of *any* person or persons or the community." (Emphases added.) 725 ILCS 5/110-6.1(e) (West 2022).

¶ 29    Our supreme court and the United States Supreme Court have acknowledge that "child pornography is intrinsically related to child sexual abuse and states have a compelling interest in safeguarding the physical and psychological health of children." *People v. Hollins*, 2012 IL

12

112754, ¶ 18 (citing *New York v. Ferber*, 458 U.S. 747, 756-59 (1982)). "[T]he harm to the child is exacerbated by [the] circulation" of child pornography. *Ferber*, 458 U.S. at 759. "[T]he distribution network for child pornography must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled." *Id.* Defendant even admits, in his memorandum to this court, that possession of child pornography "could suggest a risk of a criminal nonconsensual sex act."

¶ 30    The facts of this case demonstrate the high risk here, as police obtained, from defendant's phone, about 50 files of child pornography of children ranging in age from 5 to 10 years old. Defendant also indicated that he had been downloading child pornography for "many years." The State further proffered that defendant had access to a young child as defendant babysat his three-year-old granddaughter. Defendant's admitted significant and long-standing possession of child pornography demonstrates the threat he poses to any child to which he has access, including his three-year-old granddaughter. See *People v. Collins*, 2024 IL App (2d) 230577-U, ¶ 20 (recognizing the "significant body of caselaw, as well as the common sense understanding that individuals who collect child pornography do so because they sexually desire children"). Defendant's persistent and sustained downloading of child pornography is also evidence of a real and present safety threat to children ensnared for the purpose of maintaining a distribution network of child pornography. See *People v. Geever*, 122 Ill. 2d 313, 326-27 (1988) (addressing the injury suffered by the child victims of pornography); see also *People v. Lamborn*, 185 Ill. 2d 585, 589 (1999) ("Child pornography is particularly harmful because the child's actions are reduced to a recording which could haunt the child in future years, especially in light of the mass distribution system for child pornography."). Defendant's attempt to claim his offenses are essentially victimless and nondangerous to the public or a community has no merit. We therefore find the trial

court's finding that defendant posed a threat to community was not against the manifest weight of the evidence.

¶ 31     Defendant's second issue contends the State failed to prove by clear and convincing evidence that there were no conditions that could mitigate the threat posed by defendant. Citing to *People v. Stock*, 2023 IL App (1st) 231753, defendant contends that the State failed to present any evidence or argument on whether any conditions could mitigate any potential threat and the court failed to consider any pretrial conditions or explain why pretrial release conditions could not mitigate any potential threat posed by defendant as required by section 110-6.1(h)(1) of the Code (725 ILCS 5/110-6.1(h)(1) (West 2022)).

¶ 32     If the trial court determines that the defendant should be denied pretrial release, the court is required to make written findings summarizing the reasons for denying pretrial release. *Id.* Section 110-6.1(h)(1), in relevant part, provides:

> "(h) Detention order. The court shall, in any order for detention:
>
> (1) make a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, *including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community*, based on the specific articulable facts of the case ***." (Emphasis added.) *Id.*

¶ 33     The court here failed to explain, in the preprinted order or at the detention hearing, why less restrictive conditions would not ensure the safety of the victim or the community. The State also made no argument regarding why less restrictive means would not ensure the safety of any person or the community. We therefore do not know the basis for the court's finding. The trial court therefore failed to comply with section 110-6.1(h)(1) with respect to its less restrictive

conditions finding. The trial court's failure to include its explanation why the less restrictive means could not mitigate the threat posed by defendant precludes this court from determining whether the trial court erred in denying defendant pretrial release. Accordingly, I would vacate the trial court's order and remand for compliance with section 110-6.1(h) by providing written reasons regarding its finding that no less restrictive conditions could mitigate the threat posed by defendant.

¶ 34    For these reasons, I specially concur.